# CASES AT LAW

DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

### JUNE TERM, 1903.

| 69 619|
| 69 528|

THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. BARTHOLOMEW ZDANOWICZ, PLAINTIFF IN ERROR.

Argued June 16, 1903—Decided July 20, 1903.

1. When a defendant in an indictment avails himself of the privilege accorded by law and becomes a witness in his own behalf, he waives any constitutional or common law protection against being compelled to be a witness against himself, and may be cross-examined as a witness by the state's prosecutor. The extent of such cross-examination, and the mode of requiring answers thereto, are not deemed to require consideration in this case, for the defendant, having voluntarily testified in his own behalf, in respect to his conduct and whereabouts during a period of time involved in the inquiry on the trial, a question by the prosecutor respecting the clothes worn by him on a day included in such period, was permissible cross-examination, and there was no error in admitting that question.

2. When a defendant in an indictment, under the provisions of the Criminal Procedure act, takes a general exception to the charge of the trial court and assigns error upon a portion thereof, the reviewing court is not restricted to the consideration of such portion of the charge, severed from its context and the rest of the charge, for the duty to reverse in such case only arises when it appears that error in law was committed in the part of the charge so selected, to the prejudice or injury of the defendant in maintaining his defence.

619

3. The trial court, in its charge to the jury, defined the crime of murder in the first degree in the language approved by this court in *State* v. *Donnelly*, 2 *Dutcher* 601, and, in respect to the time required for deliberation and premeditation, declared that "it is (time) enough if the design to kill be fully and clearly conceived in the mind and purposely and deliberately executed." The definition in this respect was not criticised nor disapproved in *State* v. *Bonofiglio*, 38 *Vroom* 239. A finding that a defendant had time sufficient to fully and clearly conceive in his mind an intent to kill, and that he did thus conceive the intent and proceeded to purposely and deliberately execute it, satisfies the provisions of our statute as to both premeditation and deliberation.

On error to the Court of Oyer and Terminer of Mercer county.

For the plaintiff in error, *Edwin Robert Walker*.

For the state, *William J. Crossley*, prosecutor of the pleas.

The opinion of the court was delivered by

MAGIE, CHANCELLOR. The writ of error brings up for review the conviction of the plaintiff in error of the crime of murder in the first degree and a consequent judgment thereon in the Court of Oyer and Terminer in the county of Mercer.

The plaintiff in error has caused the entire record of the proceedings had upon his trial to be returned under the provisions of section 136 of the Criminal Procedure act of 1898. *Pamph. L., p.* 915. He has, however, specified as the causes for relief or reversal required by section 137 of that act no other matters than such as were likewise presented by assignments of error.

In behalf of the plaintiff in error, the argument is first directed to an alleged error of the trial court in the admission of a question put to plaintiff in error when under examination as a witness in his own behalf.

The rule of the common law which excluded a person indicted for crime from testifying in his own behalf was first altered in this state by a supplement to the act concerning witnesses, approved February 15th, 1871. *Pamph. L., p.* 12. It

was thereby enacted that upon the trial of any indictment, allegation or accusation of any person charged with crime, such person should be admitted to testify as a witness upon the trial, if he should offer himself as a witness in his own behalf. This act was repealed by the revision of 1874, but the eighth section of the Evidence act of that revision, approved March 27th, 1874, was a re-enactment of the same provision. *Gen. Stat., p.* 1398. The Evidence act of the revision of 1874 was repealed by the "Act to repeal sundry acts relating to evidence," approved March 23d, 1900. *Pamph. L., p.* 382. The act concerning evidence, revision of 1900, approved March 23d, 1900 (*Pamph. L., p.* 362), contains no clause permitting a person charged with crime to testify in his own behalf on the trial of an indictment, allegation or accusation. But by the provisions of section 7 of the act entitled "An act relating to courts having criminal jurisdiction and relating to proceedings in criminal cases (Revision of 1898)," approved June 14th, 1898 (*Pamph. L., p.* 866), it is, among other things, enacted that upon the trial of any indictment the defendant shall be admitted to testify, if he shall offer himself as a witness.

The record and the bills of exceptions show that the plaintiff was indicted by the grand jury and thereby charged with the crime of murder and put upon his trial in the Court of Oyer and Terminer, and that he therein offered himself as a witness in his own behalf and was admitted to testify. The point now made is presented by the exception, duly sealed, to the admission of a question over the objection of the plaintiff in error.

The objection to the question was made upon the ground that it was not competent cross-examination. That objection is now supported in argument on the ground that the admission of the question violated the well-settled doctrine which prohibits a person accused of crime from being compelled to testify against himself.

By the fifth amendment to the constitution of the United States it is, among other things, provided that no person shall

be compelled, in any criminal case, to be a witness against himself. Many of the states have included a similar prohibition in their constitutions. There is no such prohibition in the constitution of the State of New Jersey.

It is not deemed necessary to consider whether this constitutional provision will operate to prevent any state, if it is conceivable that any state should desire to do so, from enacting laws establishing a practice in criminal cases such as is in vogue in countries not following the course of the common law, or permitting an accused person to be subject to such compulsion as may be exerted by harassing examination or other means, forcible or practically forcible, compelling him to testify against himself, or to prevent the adoption by any state of a practice which might produce that effect.

Although we have not deemed it necessary to insert in our constitution this prohibitive provision, the common law doctrine, unaltered by legislation or by lax practice, is by us deemed to have its full force. In New Jersey, no person can be compelled to be a witness against himself.

But this privilege, with which every individual is clothed for his own protection, is one that may be waived. When one voluntarily admits the commission of crime or facts tending to justify an inference of the commission of crime, his voluntary confession is always admissible against him.

When a person charged with the commission of crime offers himself as a witness in his own behalf, under laws permitting him to do so, he undoubtedly waives his protective privilege to some extent. He becomes a witness, and as a testifying witness he may be cross-examined. How far such cross-examination may extend does not require consideration in this case, and we do not intend now to indicate the limit to which such cross-examination may properly be extended. Nor is it deemed necessary to consider what compulsion may be applied to require answers to proper questions asked of such a witness in cross-examination. In the State of New York, in which this privilege of the accused person is pro-

tected by a constitutional provision, the Court of Appeals calls attention to the varying decisions of the courts of other states in respect to the scope of the right of cross-examination under statutes permitting such a person to become a witness in his own behalf. It points out that in some of the states the rule has been adopted that such a witness subjects himself to the same rules of examination as any other witness, and may be asked any questions on cross-examination, on matters pertinent to the issue, and that in other states it has been held that the right of cross-examination under such statutes is confined to matters referred to in the examination-in-chief. The opinion expressed by the Court of Appeals was that, notwithstanding the prohibition in the constitution, no constitutional right of an accused was infringed if, upon his electing to take the stand as a witness in his own behalf, he was subjected to the ordinary rules of examination. *People* v. *Tice,* 131 *N. Y.* 651.

It is sufficient to dispose of the contention in this regard in this case to note two grounds upon which it is deemed ineffective.

In the first place, if the question asked was within the line of proper cross-examination, it cannot be claimed to be compulsory in character. Whether, if the witness had refused to answer, the court could have compelled him to do so, or whether, upon such refusal, the court could have struck out his evidence given on his direct examination, or otherwise exerted a compulsory power, is not, therefore, before us.

In the second place, the counsel of plaintiff in error does not contend that plaintiff in error was protected from any cross-examination. On the contrary, the claim is that, being properly subject to cross-examination, the court should have limited his cross-examination to matters previously opened in his direct examination. The contention is that the accused may thus limit the scope of his examination and cross-examination, and that the question objected to was not competent, because not within matters respecting which he had testified on his direct examination.

In the trial of Roesel, the trial court overruled questions asked of a defendant admitted to testify in his own behalf, on the ground that they related to subjects not opened on his direct examination. *Roesel* v. *State*, 33 *Vroom* 216. Afterward, the Supreme Court held that the cross-examination of a defendant, who offered himself as a witness in his own behalf, must be limited to subjects originated in his examination-in-chief. *State* v. *Sprague*, 35 *Id*. 419.

I repeat that we do not deem it necessary and do not intend to pronounce upon the propriety of this limitation upon cross-examination of a defendant who offers himself as a witness in his own behalf. If, when thus called, he should limit his testimony to a mere denial of the commission of the crime, it may be well made a question whether, upon cross-examination, his mind and conscience may not be searched as to all pertinent facts relied on by the state for conviction. But the question does not arise in this case.

Upon the direct examination of the plaintiff in error he was asked, and answered, many questions as to his conduct and whereabouts on a certain Sunday preceding the discovery of the dead body of the person he was charged with killing. The evidence had tended to show that plaintiff in error was the last person seen with the deceased on that day, and that the deceased had probably been murdered and brutally mutilated on that day. After his direct examination, in which the plaintiff in error had voluntarily answered such questions as to his conduct and whereabouts, he was turned over to the prosecutor for cross-examination. The question of the prosecutor deemed to be improper, and which was excepted to, was this: "What clothes did you have on on that Sunday afternoon?" This, we think, was admissible cross-examination upon matters brought out by the accused's direct examination. As part of his conduct, and tending to elucidate his whereabouts on that particular day, a question as to the clothing worn during that period with respect to which he had been examined, was pertinent and competent to be asked in cross-examination. The question was properly admitted.

*40 Vroom.*                    State v. Zdanowicz.

The next ground urged for reversal is an alleged error in the charge of the judge presiding at the trial. There was no specific objection to the part of the charge now objected to. The matter comes before us only upon a general exception to the charge, such as is permitted by the terms of section 140 of the Criminal Procedure act of 1898. Such an exception will not enable a plaintiff in error to single out a portion of the charge and claim that the court of review must consider such portion separate from the context and the whole charge. On the contrary, the permission of a general exception brings into review not mere excerpts from the charge, selected by the plaintiff in error, but the whole charge. For although, by section 141, error may be assigned upon any portion of a charge excepted to generally, yet by section 142 the duty of the court to reverse thereon only arises when it appears to the court that error in law was committed in that part of the charge, to the prejudice or injury of the defendant in maintaining his defence. This requires the examination of the excerpt selected in connection with the context and the whole charge.

The excerpt of the charge relied on in this assignment of error is in these words: "This does not mean that every doubt must be dispelled; it does not mean, as indicated by counsel, that every possible hypothesis of innocence must be excluded by the evidence." Viewed by itself, this excerpt plainly indicates that it was used with respect to the subject of reasonable doubt, the benefit of which must be given to the person accused of crime, and thus viewed, no error appears therein. An hypothesis of innocence which it may be possible to conceive, may be utterly unreasonable to act upon. A fantastic, unreasonable hypothesis of innocence will not justify a jury in finding a reasonable doubt. That this was the plain intent of the trial court is rendered entirely clear by the context. The judge, in immediate connection with the excerpt excepted to, proceeded to charge thus: "What the law refers to as a reasonable doubt is such a doubt as would exist if the jury, after a careful review of all the evi-

dence, rejecting that which they considered unreliable and retaining that which they considered reliable, and weighing all the facts and circumstances, find that its judgment is not convinced of the guilt of the prisoner; if, on the whole of the evidence, such reasonable doubt exists in your minds with respect to his guilt, it is your duty to give him the benefit of it." It was thus plainly expressed that a reasonable doubt would not be raised upon every possible hypothesis, but only upon a reasonable hypothesis of innocence.

The next question raised is to that portion of the charge of the trial court defining the crime of murder in the first degree. This was the language of the court: "In order to constitute murder in the first degree, and to justify a conviction of that crime, it must appear by evidence, beyond a reasonable doubt, not only that there was an unlawful killing, but that the defendant intended to take the life of the deceased, and that the intent was carried into execution willfully, deliberately and with premeditation. The term 'willfully,' as here used, means the same as intentionally, the inquiry being, did the defendant intend to take the life of the deceased? The next inquiry is, was the killing done deliberately and with premeditation? By 'deliberately' and 'premeditation,' however, the law does not mean that any particular length of time need intervene between the formation of the purpose to kill and its execution. It is not necessary that the deliberation and premeditation should continue for a day, or an hour or a minute. It is enough that the design to kill be fully and clearly conceived in the mind and purposely and deliberately executed."

Counsel asserts that this definition was adopted from the opinion of this court in the Donnelly case, the decision of which, in the Supreme Court, is reported under the title *Donnelly* v. *State, 2 Dutcher* 463, and, in this court, under the same title, in *Id.* 601.

It is claimed that the definition given in the Donnelly case has been overruled or explained in this court, so as to indicate the error which is now alleged. The case in this court thus

referred to is *State* v. *Bonofiglio,* 38 *Vroom* 239. But in that case the criticism of this court was directed to the opinion pronounced by Chief Justice Green in the Donnelly case, to the effect that proof of a specific intent to take life would be proof, under our statute, of a willful, deliberate and premeditated killing, and therefore of murder in the first degree. It was pointed out that this part of the Chief Justice's opinion was not expressly or even impliedly approved by this court in the Donnelly case, and it is to be noted that the presiding judge, in the case now before us, did not include in his charge the expression which was thus criticised. He did, however, charge in the terms approved in the Donnelly case in this court which were not modified by the opinion in the Bonofiglio case. In the latter case, this court did not intend to cast doubt on the propriety of the charge in ·the Donnelly case so far as it was approved in this court.

The quotation, in the opinion, from *People* v. *Majone,* 91 *N. Y.* 211, to the effect that, to constitute murder in the first degree, a design to kill must precede the killing by an appreciable space of time, was not designed to indicate that the careful definition of murder in the first degree approved in the Donnelly case was defective with respect to the time required for deliberation and premeditation, but rather to express the importance of that part of the definition which required that the design to kill must be fully and clearly conceived and purposely and deliberately executed. The conception of such a design and its deliberate execution necessarily takes some appreciable time. It was in this language that the charge before us was framed, and I deem it unobjectionable. Time sufficient to fully and clearly conceive the design to kill, and purposely and deliberately to execute it, satisfies our statute, and this assignment of error cannot prevail.

The fourth assignment of error, which is the last relied on, is based upon the fifth, sixth and seventh requests to charge, all of which were refused. Counsel abandons, as untenable, any objections founded upon the sixth request.

The other objections relate to the failure of the trial judge to charge as requested on the subject of reasonable doubt.

A trial court is not bound to charge in the language of requests presented, if it has already charged sufficiently and unobjectionably upon the subject. We think the trial court charged the law on this subject correctly, and that there was no error in refusing the requests for a further charge on the same subject.

On the whole case, no legal error is found pointed out by the assignments in error, and no manifest wrong appears to have been done to plaintiff in error entitling him to relief or reversal.

The judgment must therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, VAN SYCKEL, FORT, HENDRICKSON, SWAYZE, BOGERT, VREDENBURGH, VROOM, GRAY. 11.

*For reversal*—None.