THE STATE, DEFENDANT IN ERROR, v. WILLIAM MacQUEEN AND RUDOLPH GROSSMANN, PLAINTIFFS IN ERROR.

Submitted March 19, 1903—Decided September 12, 1903.

1. Under section 81 of the Criminal Procedure act (*Pamph. L.* 1898, *p.* 896), where two or more defendants are jointly indicted and tried, they together, and not severally, are entitled to ten peremptory challenges.
2. The finding of a trial court that a defendant's confession was voluntarily made, is a finding of fact, not reviewable on ordinary writ of error if there be any legal evidence to support it.
3. Questions of law not appearing by the bills of exceptions to have been raised in the trial court, will not be considered on ordinary writ of error.
4. If a reasonable doubt of guilt is raised, even by inconclusive evidence of an *alibi*, the defendant is entitled to the benefit of it.
5. Where two defendants are tried together upon an indictment charging that they, with many other persons unknown, committed a riot, and the defendants are severally convicted, a trial error that affects only one of the defendants will not work a reversal of the conviction as to the other defendant.

On error to Passaic Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT, HENDRICKSON and PITNEY.

For the plaintiffs in error, *Robert E. Van Hovenberg.*

For the defendant in error, *Eugene Emley,* prosecutor of the pleas.

The opinion of the court was delivered by

PITNEY, J. The defendants were jointly indicted (together with another party, who was not apprehended) for a riot committed on the 18th day of June, 1902, at the city of Paterson. They were tried together in the Passaic Quarter Sessions, and were severally convicted and sentenced to im-

prisonment. They pray reversal of the convictions on the ground of alleged trial errors. The case comes here upon bills of exceptions, sealed according to the common law practice. The exceptions must therefore be considered and disposed of according to the ordinary rules. The liberal practice allowed by section 136 of the Criminal Procedure act (*Pamph. L.* 1898, *p.* 915), which permits the appellate court to consider whether the plaintiff in error on the trial below suffered manifest wrong or injury, either in the admission or rejection of testimony, whether objection was made below or not, or in the charge of the court, or in the denial of any matter by the court which was a matter of discretion, whether a bill of exception was sealed or not, cannot be invoked by the plaintiffs in error, because they have not brought up the entire record of the proceedings had upon the trial, as required by section 136, and have not specified (otherwise than by the ordinary assignments of error) the causes relied upon for reversal, pursuant to section 137 of the same act.

The first two exceptions were taken during the selection of the jury, and are intended to raise the question whether, when two defendants are jointly indicted for a misdemeanor, and are tried together, they are severally entitled to ten peremptory challenges—twenty in all—or whether the defendants together are entitled to only ten such challenges. The first exception appears to have been waived, the juror in question having been subsequently excused by consent. Moreover, the bills of exceptions disclose that both defendants united in the two challenges whose denial is the subject of the exceptions. It is therefore fair to assume (there being nothing in the record to show the contrary) that they both united in interposing the ten peremptory challenges previously allowed. If each defendant had participated in these ten challenges, each had exhausted the utmost right of challenge that is claimed. And so, in strictness, the record discloses no denial by the court below of the right that is asserted.

But, supposing the question to be fairly raised, this court has already decided it adversely to the contention of the

plaintiffs in error. The right of peremptory challenge in criminal cases is regulated by sections 80 and 81 of the Criminal Procedure act. *Pamph. L.* 1898, *p.* 896. Section 81 deals with cases like the present, and it has been held that where two or more defendants are jointly indicted and tried, they, together, and not severally, are entitled to ten peremptory challenges. *State* v. *Rachman,* 39 *Vroom* 120.

The third exception relates to the admission in evidence, over objection by the defendants, of a statement made by the defendant MacQueen to a witness, Shane, who arrested MacQueen in New York and brought him to Paterson. Shane was asked:

"*Q.* Had you any conversation with him going from New York to Paterson?

"(Objected to on the ground that he was under arrest when being brought here.)

"*Q.* (By the Court.) What he said was entirely voluntary?

"*A.* Yes, sir.

"*Q.* (By Mr. Ward.) [Defendant's counsel.] He was then being brought here on requisition?

"*A.* Yes, sir.

"*Q.* On this very charge?

"*A.* Yes, sir."

Thereupon the trial judge held that the question was admissible and allowed the testimony of the witness as to the conversation between him and the defendant MacQueen to go to the jury.

When, upon the trial of an indictment objection is made to the admission of a statement made by the prisoner while in custody, on the ground that the statement was not voluntarily made, but was induced by means of threats or promises, it is the duty of the trial judge to proceed to try the question of fact whether the statement was voluntary. The defendant is at liberty to introduce evidence upon this issue if he desires, or he may rest upon the evidence introduced by the state. The issue is for the decision of the trial court and not of the jury, and the determination is not reviewable on ordinary writ of error if there be any legal evidence to

support it. In order to admit a statement thus made by a prisoner in custody, it is not in this state essential to show that the prisoner, before making the statement, was informed that he was not under compulsion to speak or was told that anything he might say would be used against him. *State* v. *Hernia,* 39 *Vroom* 299. See, also, *Roesel* v. *State,* 33 *Id.* 216; *Bullock* v. *State,* 36 *Id.* 557; *State* v. *Hill, Id.* 626; *State* v. *Young,* 38 *Id.* 223; *State* v. *Gruff,* 39 *Id.* 287.

In the present case the defendants saw fit to rest their objection to the admissibility of the statement upon the brief testimony of Shane, just quoted. It is manifest that the ruling of the trial judge was not unsupported by evidence.

The fourth exception was sealed during the examination of the defendant MacQueen. Under cross-examination by the prosecutor of the pleas he was shown a newspaper article in manuscript, entitled "The Propaganda in Paterson," which he admitted was written by him in order to be sent to a newspaper in England "as a description of what was going on." He stated that the article was not completed, and that it was "just a hasty sketch that I started to write to send to a newspaper." Defendants' counsel thereupon objected to the reading of the article, on the ground that it was unfinished, and that an article written for a newspaper after the happening of the alleged crime is not in the nature of a confession, and cannot be used against the defendant. The court expressed the opinion that where defendant makes an admission respecting the transaction in question by writing an account of it for a newspaper, such newspaper article is an admission by the defendant, and proceeded to say: "In that sense I will admit any question concerning this article, it being accompanied with the explanation that it is unfinished." To this ruling exception was taken and sealed. The ruling related to the admission of questions on cross-examination and not to the admission of the newspaper article in evidence. We think the ruling was correct, but, if otherwise, it does not appear to have done harm, for no evidence appears to have been introduced pursuant thereto.

The fifth bill of exceptions discloses simply the following colloquy between counsel for the defendants and the prosecutor of the pleas:

"By Mr. Ward—How did the state come into possession of the article?

"Mr. Emley—I am not answering questions.

"Mr. Ward—Then I object on the ground that it was taken from him. They could not use that class of evidence against the defendant. I object, unless it was voluntarily given by the defendant.

"The Court—I will overrule the objection."

Whereupon the exception was sealed.

What the objection related to does not appear. The bill of exceptions does not disclose that the document had as yet been offered. If the objection was to the cross-examination of MacQueen with respect to the article, the objection is groundless. If it was intended to question the admissibility of the newspaper article on the ground that it was not voluntarily surrendered by the defendant, the record does not disclose any basis for the objection. It was not incumbent upon the state to show from whom the article was obtained. There was no pretence that, in the writing of the article, MacQueen was under any influence of fear or hope. Therefore what he had written was admissible like any other statement made by him.

"The ground on which a confession made by the accused under promise of favor or threats of injury is excluded as incompetent *is not because any wrong is done to the accused in using them, but because he may be induced, by the pressure of hope or fear, to admit facts unfavorable to him without regard to their truth."* Per Chief Justice Depue, in *Bullock v. State, 36 Vroom 557* (at p. 566) (*Court of Errors and Appeals*). See, also, *Roesel v. State, 33 Id. 216*. The reason for the rule wholly fails when the offer is to introduce in evidence a written statement prepared by the defendant previous to his arrest. The fact (if it were a fact) that MacQueen had intended to add something to what had been written, did not render the writing any the less evidential.

But the exception itself is altogether too vague to be seriously treated as raising any legal question for our review.

The sixth exception was taken to the ruling of the trial judge in permitting the prosecutor to read in evidence the newspaper article in question. Just prior to its admission MacQueen had stated, in answer to a question asked on cross-examination, that the writing referred to a "general movement of the working-class." He was asked whether he had included in it any criticism of the violence that took place in Paterson on the day of the riot, June 18th. MacQueen answered, "I don't know whether there was specially anything or not; as I have said, it is unfinished.

"*Q.* Look at it.

"*A.* I don't want to read it—it is unfinished.

"*Q.* (By Mr. Ward.) [Defendant's counsel.] How did they get it?

"*A.* They stole it from me when they arrested me; they rifled my pockets and took everything I had, even private letters.

"By Mr. Emley—I will read the article.

"By Mr. Ward—I object.

"By the Court—I will allow the reading of the article."

Whereupon counsel for the defendants prayed an exception, and the court sealed the same accordingly.

This exception has been discussed by counsel for the plaintiffs in error as if it raised some question of a violation of rights secured by the fourth and fifth amendments to the federal constitution; the former of which prohibits "unreasonable searches and seizures," and the latter declares, among other things, that no person "shall be compelled, in any criminal case, to be a witness against himself." The case of *Boyd* v. *United States,* 116 *U. S.* 616, is cited as an authority. It is, however, established that the first ten amendments of the constitution of the United States are limited to the sphere of the federal government, its courts and officers, and constitute no prohibition upon the states. *Barron* v. *Baltimore,* 7 *Pet.* 243; *Smith* v. *State of Maryland,* 18 *How.* 71, 76; *Spies* v. *Illinois,* 123 *U. S.* 131, 166. The prohibition of unreason-

able searches and seizures is embodied in the constitution of this state. *Art.* 1, *pl.* 6. But this instrument contains no declaration like that above quoted from the fifth amendment. With us the proof of confessions and admissions made out of court, by persons accused, rests upon common law principles. *State* v. *Zdanowicz,* 55 *Atl. Rep.* 743, 744, recently decided by our Court of Errors and Appeals. It would seem that a written confession must stand on the same basis as one made orally, and that neither form of confession (where voluntarily made) is to be excluded on the theory that its use in evidence is equivalent to compelling one to be a witness against himself.

As to the mode in which the document now in question was obtained, it is very generally held that papers unlawfully procured, even by means of an unjustifiable search or seizure, are nevertheless admissible if evidential *per se.* 1 *Greenl. Evid.,* § 254a, citing *Legatt* v. *Tollervey,* 14 *East* 302; *Jordon* v. *Lewis, Id.* 305 (*note*); *Commonwealth* v. *Dana,* 2 *Metc.* 329, 337. See, also, *Gindrat* v. *People,* 138 *Ill.* 103; *Siebert* v. *People,* 143 *Id.* 571; *Trask* v. *People,* 151 *Id.* 523; *Bacon* v. *United States,* 97 *Fed. Rep.* 35, 40. And it would seem that after arrest made the person of the accused may properly be examined without a search-warrant in order to find evidence of his guilt, and that such an examination would not be deemed an unreasonable search.

But we must decline to pass judgment upon these questions, for the reason that they were not presented to or passed upon by the court below. No ground whatever was stated for the objection that was overruled when the trial judge admitted the newspaper article in evidence. The whole of the bills of exception may be searched in vain for anything in the form of a certificate or statement by the judge disclosing that there was at any time presented to his mind, and by him decided, the question whether the use of this paper in evidence violated the right of the defendant to be secure against unwarrantable searches and seizures, or his immunity from being compelled to be a witness against himself. The sixth exception discloses not a word even of argument by counsel in support of his objection. The bills of exceptions already

discussed contain, it is true, objections based on various grounds that are more or less vaguely suggested, rather than stated; for instance—"that the article was written by Mac-Queen for a newspaper; that it was not evidence; that he says it is unfinished; that an article written by a man after the happening of the act for which he is being tried is not in the nature of a confession; that it is nothing but an article for a newspaper, which cannot be used against him under this charge of riot; that if it was taken from him they could not use that class of evidence against the defendant. I object unless it was voluntarily given by the defendant." But these were merely arguments upon matters then pending, or supposed to be pending, for the court's decision. Rulings were thereupon made which, as already seen, were correctly made. It is going too far to say that the trial judge is under a duty to remember everything that is thus suggested or stated in argument upon one point and apply it to the decision of an objection raised at a later period in the trial, when that objection is unaccompanied by the suggestion of any grounds for its making. As already remarked, this case comes here on a strict bill of exceptions. Every presumption is in favor of the correctness of the result reached below, unless by the exceptions it is made to appear that some ruling injurious to the defendant was made by the trial judge in violation of some legal principle that was presented at the time for his consideration. An exception taken to the overruling of an objection, for which no reason is given at the time, is entirely futile. This view has been so often reiterated by our court of last resort as to require no argument at this time for its support. *Trade Insurance Co.* v. *Barracliff,* 16 *Vroom* 543; *Garretson* v. *Appleton,* 29 *Id.* 386, 391; *Consolidated Traction Co.* v. *Behr,* 30 *Id.* 477; *Ottawa Tribe* v. *Munter,* 31 *Id.* 459.

The seventh exception is a general one taken to the whole of the charge of the trial court to the jury, under section 140 of the Criminal Procedure act (*Pamph. L.* 1898, *p.* 916), which permits such an exception without specification at the time of any particular ground or grounds for the exception,

and without specification of the portions of the charge to which exception is taken. By section 141 of the same act it is provided that where such general exception has been taken error may be assigned upon any portion of the charge. And under section 142, if upon the hearing of the case upon writ of error it shall appear that any error of law has been committed in any part of the charge, to the prejudice or injury of the defendant, it is the duty of the court of review to reverse the judgment. Under this statutory practice we are confined, of course, to those portions of the charge that are mentioned in the assignment of errors, and are not to reverse unless the error is seen to have worked prejudice or injury to the defendant in maintaining his defence. In determining the latter question, the effect of the entire charge is to be taken into consideration, as well as the particular language that may be objected to. *State* v. *Zdanowicz, supra.*

The charge discloses that numerous witnesses on the part of the state had testified to the actual presence of both defendants in the mob at the time of the riot; that the acts of riot were abundantly proved; that MacQueen did not dispute his presence with and leadership of the mob, but asserted that instead of encouraging violence he preached and talked against it. The defendant Grossmann, however, had testified that he was not in the city of Paterson on the 18th of June, and had supported the *alibi* by the production of a number of witnesses who had testified to his presence in New York on that day. The first assignment of error that relates to the charge is that the whole charge was contrary to law and injurious to the interests of the defendants. This assignment is so vague as plainly to violate the spirit of sections 140, 141 and 142 of the Criminal Procedure act already mentioned, and exhibits no ground for reversal. *State* v. *MacQueen, ante p.* 476.

Another assignment, however, deals with the refusal of the judge to charge as requested upon the question of *alibi*. He was asked to charge that if, upon the whole case, the testimony raised a reasonable doubt that the defendants were present when the alleged crimes took place, they should be

acquitted. Another instruction requested was: "That the defendant is not bound to prove an *abibi* beyond a reasonable doubt; if, upon the whole case, the testimony raises a reasonable doubt that the defendant was present when the crime was committed, he should be acquitted."

As MacQueen admitted his presence, these requests were pertinent only to the case of Grossmann. Both requests were refused, with comments that gave the jury to understand that while a defendant asserting an *alibi* was not bound to prove it beyond a reasonable doubt, he must establish it by a clear preponderance of evidence. The impression left upon the jury must have been that the evidence tending to show the absence of Grossmann was to be disregarded, unless it outweighed that which tended to prove his presence at the scene of the riot. But whatever goes towards proving an *alibi* (although it falls short of establishing it), at the same time tends to throw doubt upon the commission of the crime, where the presence of the defendant is essential to guilt. And if a reasonable doubt of guilt is raised, even by inconclusive evidence of an *alibi*, the defendant is entitled to the benefit of that doubt. *Sherlock* v. *State*, 31 *Vroom* 31. The same principle applies where a defendant introduces evidence tending to establish his good character, in order to show the improbability of his guilt. *Baker* v. *State*, 24 *Id.* 45.

The instructions to the jury upon the question of *alibi* were erroneous.

The eighth and last exception discloses that, when the jury was about to retire, counsel for the defendants objected to their taking with them into the jury-room the newspaper article written by the defendant MacQueen, and already referred to. No ground was suggested as a basis for the objection, and so, for reasons already given, the objection was futile. Under section 182 of the Practice act (*Gen. Stat., p.* 2563) papers read in evidence, though not under seal, may be carried from the bar by the jury. The provision originated in an act passed November 10th, 1797, entitled "An act relating to juries and verdicts." *Pat. L., p.* 261. This court has already decided that the transfer of the enactment

into the Practice act did not affect its previous signification, and that it is error for a court to refuse to allow the jury to take with them from the bar the exhibits read in evidence at the trial. *State* v. *Raymond,* 24 *Vroom* 260.

It will thus be seen that the only error appearing in the record is one that occurred in the instructions to the jury respecting the *alibi*—a question with which the defendant Grossmann was alone concerned. The indictment charges that these defendants, with one hundred and more other persons unknown, committed the riot. Although the agency of several persons is essential to the crime of riot, it needs not that all named in the indictment be shown to have participated, if it be charged that other persons unknown, sufficient to constitute the requisite number, took part. Under the present indictment either of the plaintiffs in error might have been convicted while the other was acquitted.

The legal ascertainment of the guilt of Grossmann is therefore not essential to the guilt of MacQueen. *Whart. Cr. L.,* §§ 431, 434, 435. The record shows that the jury found them severally guilty, and that they were severally sentenced.

There being no error in the record by which MacQueen is aggrieved, his conviction should be affirmed. As to Grossmann, there should be a reversal, with award of a *venire de novo.*