STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ELAINE MILLER, A/K/A ELAINE HINES, DEFENDANT-APPELLANT.

Argued November 19, 1974—Decided April 22, 1975.

*Mr. David R. Arrajj,* Assistant Deputy Public Defender, argued the cause for defendant-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Elson P. Kendall,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. Lawrence H. Posner,* Assistant Prosecutor, on the brief; *Mr. Karl Asch,* Union County Prosecutor, attorney).

The opinion of the Court was delivered by

SULLIVAN, J.  Defendant was convicted on a two-count indictment of having exchanged two counterfeit $20 bills with intent to have the same uttered or passed in violation of *N. J. S. A.* 2A:109–2(a).  She was sentenced to two concurrent indeterminate terms in the Correctional Institution for Women.

At her trial, defendant testified that she had not entered the Price-Rite Market on the two days when the bills were passed.  On cross-examination she denied that following her arrest she had admitted to Detective Anthony Barile that she had passed the bills not knowing they were counterfeit.

The State called Detective Barile in rebuttal.  He testified that he spoke with defendant at police headquarters following her arrest and that first he advised her of her constitutional rights which she said she understood.  Defendant then

admitted having cashed the two bills in question, but denied knowing they were counterfeit. When Detective Barile began to testify about the statement he had taken from defendant, defense counsel requested a hearing on whether or not the statement met the requirements of *Miranda v. Arizona,* 384 *U. S.* 436, 86 S. Ct. 1602, 16 *L. Ed.* 2d 694 (1966).[1] The request was denied on the ground that the statement was admissible under *Harris v. New York,* 401 *U. S.* 222, 91 S. Ct. 643, 28 *L. Ed.* 2d 1 (1971),[2] and that compliance with the requirements of *Miranda* was not a prerequisite to admissibilty on rebuttal. Counsel then requested a charge limiting the jury's use of the statement to credibility only. This request was also denied, the court ruling that the statement could be used not only to affect defendant's credibility, but also as an admission. The court held that in a situation where the statement contains admissions of fact at issue in the case, a jury would be unable to comply with an instruction that the statement may only be considered as affecting the credibility of the witness and not as an admission of fact.

The Appellate Division in an unreported opinion affirmed the judgment of conviction. This Court granted certification, 65 *N. J.* 298 (1974), to consider *Harris v. New York, supra,* in the factual context here presented.

---

[1]*Miranda* bars from evidence statements obtained by the police in custodial interrogation unless, before the questioning begins, the accused, having been fully advised of his constitutional rights, knowingly and intelligently waives such rights and agrees to answer questions or make a statement.

[2]*Harris* holds that while an in-custody statement taken from a defendant without first giving the *Miranda* warnings may not be used by the State as part of its case in chief, if the defendant takes the stand as a witness and gives testimony which is at variance with what was said in the statement, the statement, if it otherwise satisfies standards of admissibility, may be used to impeach defendant's credibility as a witness. The *Harris* rationale was recently reaffirmed by the United States Supreme Court in *Oregon v. Hass,* —— *U. S.* ——, 95 S. Ct. 1215, 43 *L. Ed.* 2d 570 (1975).

We conclude that the trial court's interpretation of *Harris* was erroneous. An in-custody statement taken from an accused by the police without first complying with the *Miranda* rule is not admissible in evidence as part of the State's main case. However, if it otherwise satisfies standards of admissibility, it may be used to impeach the defendant's credibility as a witness should the defendant take the witness stand and give testimony which is at variance with what was said in the statement to the police. But the jury should be instructed as to the limited consideration it may give to the statement and its contents.

We recognize that this is a difficult assignment to give a jury in a situation where the statement contains admissions of fact at issue in the case. Nevertheless, *Miranda* stands as an absolute bar to use of the statement as substantive evidence and the jury must be told that it may use the statement only in weighing defendant's credibility as a witness. See *New Jersey Rules of Evidence, Rule* 6. This is the uniform interpretation of *Harris* given by courts which have considered the matter.

It has been suggested that because of the difficulty faced by a jury in this type of situation, this Court, as it has the right to do, should, as a matter of state law, impose greater restrictions on police activity than required under federal constitutional standards and hold that a non-*Miranda* statement may not be used by the State for any purpose. See *State v. Santiago,* 53 *Haw.* 254, 492 *P.* 2d 657 (1971).

The decision of the United States Supreme Court in *Harris* was anticipated in this State. *State v. Kimbrough,* 109 *N. J. Super.* 57 (App. Div. 1970). Since *Harris* was decided, it has been cited in *State v. Falco,* 60 *N. J.* 570, 582 (1972); *State v. Burt,* 59 *N. J.* 156, 165 (1971) (Hall, J. concurring); *State v. Slobodian,* 120 *N. J. Super.* 68, 73–74 (App. Div. 1972), certif. denied 62 *N. J.* 77 (1972). In *Harris* the opinion of the United States Supreme Court

states (401 *U. S.* at 226; 91 S. Ct. at 646, 28 *L. Ed.* 2d at 5):

The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.

We conclude that *Harris* as applied herein is a valuable truth-finding mechanism which does not impinge on a defendant's federal or state constitutional rights. Nor do we think that Evidence Rules 25, 37 and 38 call for a different result. See *Evid. R.* 5.

▉ Of course, in a *Harris*-type situation, the trial court would always have the right under Evidence Rule 4 to exclude the statement entirely and bar its use even for the limited purpose of impeaching the defendant's credibility as a witness, if it concludes that the probative value of the statement is substantially outweighed by the risk that its admission would create substantial danger of undue prejudice or of misleading the jury.

▉ Our holding that the trial court's ruling was erroneous does not necessarily require a reversal and new trial. Detective Barile testified that prior to questioning defendant about the counterfeit bills he fully advised her of her *Miranda* rights and she said she understood. She then admitted she had passed the bills but without knowledge that they were counterfeit. As heretofore noted, defendant's request for a "full-fledged *Miranda voir dire*" was refused and the statement was admitted as substantive proof. But this may not have been prejudicial to defendant if, in fact, and as Detective Barile testified, the *Miranda* prerequisites were satisfied. However, defendant is entitled to a hearing and a ruling on this issue.

We therefore affirm the judgment of conviction but remand the matter to the trial court to hold a *Miranda* hearing on the admissibility of defendant's statement to Detective Barile. If, after hearing the State's and defendant's

proofs, the trial court finds that the requirements of *Miranda* were met and that the statement was admissible as substantive proof, the judgment of conviction will stand, subject to defendant's right of appeal from the *Miranda* ruling. If the trial court finds that the *Miranda* warnings were not fully given and understood and that, therefore, the statement was not admissible as substantive proof, the judgment of conviction is to be set aside and a new trial had. *State v. Kelly*, 61 *N. J.* 283, 294-295 (1972); *State v. Loray*, 46 *N. J.* 179 (1965).

Defendant also appeals her sentence of two concurrent indeterminate custodial terms at the Correctional Institution for Women. We conclude that the sentences should be affirmed, but service of them suspended. Defendant is a young woman with no prior record of any kind. She is the mother of a seven-year-old child whom she lives with in a stable home environment. She has worked steadily since her graduation from high school and is presently employed by New Jersey Bell Telephone Company. The Union County Probation Department, after a full review of her situation, recommended a non-custodial sentence. The circumstances of the particular case, in our opinion, call for suspension of the sentences imposed with defendant placed on probation for a period of two years. The foregoing, of course, is subject to the outcome of the remand.

So ordered.

PASHMAN, J. (dissenting). This case presents the Court with its first opportunity since the decision of the United States Supreme Court in *Harris v. New York*, 401 *U. S.* 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971) to consider the use for purposes of impeachment of statements obtained by the police from a defendant without compliance with the requirements set out in *Miranda v. Arizona*, 384 *U. S.* 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The majority has chosen to follow *Harris*. I would not do so.

In *Miranda,* the Supreme Court recognized that use at trial of statements obtained from the defendant by the police was limited not only by concepts of due process found in the fifth and fourteenth amendments to the federal constitution, *see, e. g., Haynes v. Washington,* 373 *U. S.* 503, 83 S. Ct. 1336, 10 L. Ed. 2d 513 (1963) ; *Brown v. Mississippi,* 297 *U. S.* 278, 56 S. Ct. 461, 80 L. Ed. 682 (1936), and by the right to counsel found in the sixth amendment, *see, e. g., Escobedo v. Illinois,* 378 *U. S.* 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964) ; *Massiah v. United States,* 377 *U. S.* 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964), but also by the defendant's privilege against self-incrimination. In doing so, it returned to the earliest constitutional rationale for excluding improperly obtained confessions. *See Bram v. United States,* 168 *U. S.* 532, 542, 18 S. Ct. 183, 42 L. Ed. 568 (1897). Emphasizing the special place in the Anglo-American legal tradition of the privilege against self-incrimination and the great potential for unfairness in conventional police interrogation practices, the Court in *Miranda* established a prophylactic rule to prevent encroachment on the rights of persons accused of crimes:

[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.

The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned. [384 *U. S.* at 444–45, 86 S. Ct. at 1612; footnote omitted].

In *Harris v. New York, supra,* the Court created an exception to this rule of exclusion, permitting the state to use for purposes of impeaching the defendant when he chooses to testify in his own defense statements obtained from him by the police in violation of the requirements of *Miranda.*[1]

The reasoning and holding of the majority in *Harris* are vulnerable to criticism on both technical and policy grounds. The technical objections to the decision as a matter of federal constitutional jurisprudence are lucidly set out in Justice Brennan's dissent, *Harris v. New York,* 401 *U. S.* 222, 226, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971), and need be mentioned only briefly here:

(1) The *Harris* situation was specifically considered by the Court in the *Miranda* opinion itself and use for purposes of impeachment of statements taken by the police from the defendant without their first giving *Miranda* warnings was expressly rejected. *Miranda v. Arizona, supra,* 384 U. S. at 476–77, 86 S. Ct. 1602.

(2) The heavy reliance placed by the majority on *Walder v. United States,* 347 *U. S.* 62, 74 S. Ct. 354, 98 L. Ed. 503 (1954) was unfounded. *Walder* allowed the prosecutor to impeach the defendant by use of evidence seized in violation of the fourth amendment when such evidence contradicted testimony by the defendant on collateral matters. It did not permit use of such evidence, even for pur-

---

[1] The recently decided case of *Oregon v. Hass,* —— *U. S.* ——, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975), cited by the majority, is not in point. That case, although relying upon *Harris v. New York, supra,* as precedental authority, did not concern failure by the police to give *Miranda* warnings, but, rather, misconduct by the police after the warnings had been properly given.

poses of impeachment, where the evidence bears on essential elements of the prosecutor's case. *Walder v. United States, supra* at 65, 74 S. Ct. 354.

(3) The majority ignored a well-established line of cases holding that the fifth amendment prohibits any attempt to burden the defendant's choice as to whether to testify or remain silent. *See, e. g., Griffin v. California,* 380 *U. S.* 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965).

While these technical defects are pertinent to the amount of deference to be paid the decision in *Harris,* the policy objections to this decision are of much greater consequence. *See generally Harris v. New York, supra,* 401 U. S. at 226, 91 S. Ct. 643 (Brennan, J. dissenting); *Riddell v. Rhay,* 404 *U. S.* 974, 92 S. Ct. 336, 30 L. Ed. 2d 291 (1971) (Douglas, J. dissenting from denial of writ of certiorari); *State v. Santiago,* 53 *Haw.* 254, 492 *P.* 2d 657 (Haw. Sup. Ct. 1971); *cf. Oregon v. Hass,* —— *U. S.* ——, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975).

*Miranda v. Arizona, supra,* established standards for police conduct so as to protect constitutional rights of persons accused of crime. It sought to deter violation of standards by depriving the state of the fruits of police misconduct. *Harris v. New York, supra,* does not purport to overrule the standards of conduct established in *Miranda;* it simply permits courts to close their official eyes to police misconduct in certain circumstances. In doing so, it significantly undermines the deterrent value of the *Miranda* rule:

Yet, after Harris, there is no longer any real incentive for police to obey Miranda. Credibility is always an issue when an accused takes the stand in his own defense. The license granted by the Harris majority to use Miranda-violative statements for impeachment purposes, therefore, foreshadows the possible use of tainted statements in almost every case. This opens the door to a calculated risk by police interrogators. If, in response to Miranda warnings, an accused indicates he wishes to have an attorney present during questioning, the request may be ignored with virtual impunity. If a damaging statement is thereafter forthcoming, it may almost certainly be used against the accused if he later elects to take the stand in his own defense. Moreover, the risk is minimal that the inability to

use the statement in the prosecution's case-in-chief will result in a dismissal of the charges or a directed verdict of acquittal. Unlike other situations in which exclusionary rules operate to exclude illegally obtained physical evidence, it is seldom that a prima facie case requires corroboration from the lips of the accused. [*Riddell v. Rhay, supra,* 404 U. S. at 974, 92 S. Ct. at 338 (Douglas, J. dissenting from denial of writ of certiorari)].

In addition, by permitting judicial tolerance of and reliance upon improperly obtained evidence, it makes the courts a vehicle for government wrongdoing. This not only demeans the judicial process but subtly undermines the entire foundation of government under law. The matter was aptly put by Justice Brandeis in his dissent in *Olmstead v. United States,* 277 U. S. 438, 485, 48 S. Ct. 564, 575, 72 L. Ed. 944 (1927),[2] an early wiretapping case:

> In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.

*Miranda* amply documents the widespread use of police interrogation tactics which rely on subtle forms of deception and coercion and which take advantage of defendant's ignorance of his constitutional rights to remain silent and consult counsel. 384 U. S. 445–58, 86 S. Ct. 1602. These tactics are not merely unfair, they cast doubt on the reliability of statements obtained from defendants through their use. The effect of the subtly coercive atmosphere of the custodial police interrogation, though not rendering the statements coerced for purposes of the due process clause, may induce the defendant to misstate or exaggerate facts in ways which, though understandable in the circumstances in which they were made, appear as devastating inconsistencies when

---

[2] *Olmstead* was overruled and Brandeis's view vindicated in *Katz v. United States,* 389 U. S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

later produced at trial. *Harris* ignores the fact that the rules set out in *Miranda* are calculated to advance the cause of truth as well as that of fairness.

The decision in *Harris* heavily burdens defendant's right to choose to testify or to remain silent at trial, a right which is protected by the fifth amendment. *Griffin v. California,* 380 *U. S.* 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). By choosing to testify, the defendant not only exposes his own credibility to question and subjects himself to cross-examination by the prosecutor on all aspects of his defense but, under *Harris,* also opens the door to introduction in rebuttal of highly prejudicial statements which the state has illegally obtained from him. A recent opinion describes this as a "grisly Hobson's choice," *Commonwealth v. Woods,* 455 *Pa.* 1, 7, 312 *A.* 2d 357, 360 (Pa. Sup. Ct. 1973) (Roberts, J. concurring). I do not consider this characterization unfair or exaggerated.

Arguably, the consequences of *Harris* are mitigated by the limitation to impeachment of the use of an illegally obtained statement. It would, however, be excessively ingenuous to suppose that the jury would or could treat highly incriminating statements made by the defendant solely as evidence of credibility and ignore them for all other purposes. *Riddell v. Rhay, supra,* 404 *U. S.* at 974, 92 S. Ct. 336. Indeed this Court rejected such a supposition in *State v. Boone,* 66 *N. J.* 38, 48–49 (1974) where the State sought admission of a previously withdrawn guilty plea. *Cf. Bruton v. United States,* 391 *U. S.* 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968); *Jackson v. Denno,* 378 *U. S.* 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964); *Krulewitch v. United States,* 336 *U. S.* 440, 453, 69 S. Ct. 716, 93 L. Ed. 790 (1949) (Jackson, J. concurring).

The majority in *Harris* seeks to justify the exception to the *Miranda* rule on the grounds that to adopt any other rule would permit *Miranda* to be "perverted into a license to use perjury by way of defense." *Harris v. New York, supra,* 401 U. S. at 226, 91 S. Ct. at 646. It should first be noted

that the *Harris* majority has characterized the issue in language more dramatic than accurate. The fact that the defendant at trial makes statements inconsistent with prior statements made to the police does not demonstrate that his testimony is perjured. Prior inconsistent statements may often be harmonized or explained. If the statements are irreconcilable it may indicate that the prior statement was false rather than the latter, a realistic possibility where the prior statement was made under the subtly coercive circumstances of the station house interrogation. Nor does *Miranda* bar the prosecutor from exploring the defendant's credibility. It leaves him all the traditional tools for unmasking falsehood, requiring only that he use fair and legal methods rather than ones which are rooted in official misconduct.

Even were the *Harris* majority's characterization accurate, its conclusion would not follow. It is a common phenomenon in the law that evidence probative as to substantive issues or the credibility of a witness is excluded because its admission would conflict with other important policies. Thus, in appropirate circumstances, we exclude statements made by a criminal defendant to his lawyer, *Evid. R.* 26, to his spouse, *Evid. R.* 28, or to his clergyman, *Evid. R.* 29. We exclude statements whose disclosure would imperil the State, *Evid. R.* 34. We exclude statements made under previous grant of immunity. We exclude offers to compromise or bargain for a plea, *Evid. R.* 52, and previously withdrawn guilty pleas. *State v. Boone, supra.* The decision in *Miranda v. Arizona* involved an express decision that deterrence of police misconduct and preservation of the integrity of the criminal justice system were policies of sufficient weight to justify the loss of some relevant evidence.

However unsound the decision of the United States Supreme Court in *Harris v. New York,* 401 *U. S.* 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971) as a matter of federal constitutional law, its holding is nevertheless the definitive construction of the federal constitution. While we may criticize the decision, we cannot decline to obey it. *State v. Funicello,*

60 *N. J.* 60, 69 (1972) (Weintraub, C. J. concurring) ; *Jackman v. Bodine,* 43 *N. J.* 453, 479 (1964) (Haneman, J. concurring). Such decisions, however, do not impair the power of this Court to adopt as a matter of State law more rigorous rules for the protection of the individual, *Cooper v. California,* 386 *U. S.* 58, 62, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967), as we have had occasion to do in the past. *E. g., Rodriguez v. Rosenblatt,* 58 *N. J.* 281 (1971), *see generally, State v. Horton,* 34 *N. J.* 518 (1961). *Cf. Robinson v. Cahill,* 62 *N. J.* 473 (1973).

Although the Constitution of 1947 does not expressly guarantee the privilege against self-incrimination, that privilege has been recognized as a common law right since the very earliest days of independence. *State v. Fary,* 19 *N. J.* 431 (1955) ; *State v. Zdanowicz,* 69 *N. J. L.* 619 (E. & A. 1903). It is so fundamentally woven into our system of criminal justice that it may fairly be treated as one of the basic and absolute rights incorporated into *N. J. Const.* (1947), Art. 1, § 1. *King v. South Jersey National Bank,* 66 *N. J.* 161, 178 (1974) ; *Ransom v. Black,* 54 *N. J. L.* 446, 448 (Sup. Ct. 1892), aff'd 65 *N. J. L.* 688 (E. & A. 1893). In addition, it is adopted as part of our rules of evidence. *Evid. R.* 25, 37, 38.

I would construe *N. J. Const.* (1947), Art. 1, § 1 and the rules of evidence as incorporating the principles of *Miranda v. Arizona,* 384 *U. S.* 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1971) and would reject the exception permitted by *Harris v. New York, supra. Cf. King v. South Jersey National Bank,* 66 *N. J.* 161, 195 n. 7 (1974) (Pashman, J. dissenting). Neither the majority in *Harris* nor the majority in this case has demonstrated that arguments for adopting this exception outweigh the strong policy arguments against doing so set out above.

I find the decision of the majority on this issue particularly unsatisfying in that it does not deal with our rules of evidence. *Evid. R.* 25 provides in pertinent part:

Subject to Rule 37, every natural person has a right to refuse to disclose in an action or to a police officer or other official any matter that will incriminate him or expose him to a penalty or a forfeiture of his estate. * * *

*Evid. R.* 37 states in pertinent part:

A person waives his right or privilege to refuse to disclose or to prevent another from disclosing a specified matter if he or any other person while the holder thereof has (a) contracted with anyone not to claim the right or privilege or, (b) *without coercion and with knowledge of his right or privilege,* made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone. [Emphasis added].

*Evid. R.* 38 provides:

Evidence of a statement or other disclosure is inadmissible against the holder of the privilege if the disclosure was wrongfully made or erroneously required.

It may well be that *Evid. R.* 37 ought to be construed to require proof of the giving of warnings equivalent to those required by *Miranda.* It is clear that the language of the rule requires at least an affirmative demonstration that the defendant had actual knowledge of his right to remain silent at the time of the police interrogation. *Evid. R.* 38 provides that in the absence of such a demonstration, the evidence must be excluded. It makes no exceptions for use for purposes of impeachment. The majority, even if it adopts the general principle of *Harris,* must limit it to at least this extent.

I recognize that the vast majority of courts which have considered the *Harris* issue since the decision of that case have chosen to adopt the exception to *Miranda. See, e. g., State v. Jorgenson,* 108 *Ariz.* 476, 502 *P.* 2d 158 (Ariz. Sup. Ct. 1972) ; *People v. Moore,* 54 *Ill.* 2d 33, 294 *N. E.* 2d 297 (Ill. Sup. Ct. 1973), *cert.* denied 412 *U. S.* 943, 93 S. Ct. 2787, 37 L. Ed. 2d 404 (1973) ; *Commonwealth v. Harris, Mass.,* 303 *N. E.* 2d 115 (Mass. Sup. Jud. Ct.

1973). One jurisdiction has expressly refused to do so. *State v. Santiago,* 53 *Haw.* 254, 492 *P.* 2d 657 (Haw. Sup. Ct. 1971), and others have expressed varying degrees of doubt. *See, e. g., Commonwealth v. Woods,* 455 *Pa.* 1, 312 *A.* 2d 357 (Pa. Sup. Ct. 1973).[3] I find the latter view the sounder one.

I concur with the majority insofar as it holds that the matter must be remanded for a hearing to determine whether *Miranda* warnings were given. I also concur in its holding that defendant should receive a non-custodial sentence if the conviction is ultimately sustained. As to the admissibility of Detective Barile's testimony upon retrial, if the trial court finds that *Miranda* warnings were given, the testimony is admissible. If the trial court finds that no *Miranda* warnings were given, the testimony is not available for any purpose and I therefore dissent.

CLIFFORD, J. (concurring in part and dissenting in part). In only one rather narrow, but fundamental, respect do I depart from the judgment of the Court. I agree that the case should be sent back to the trial judge for a determination of whether or not the requirements of *Miranda v. Arizona,* 384 *U. S.* 436, 86 S. Ct. 1602, 16 *L. Ed.* 2d 694 (1966), were met, and that if they were, the conviction should stand. If the conviction survives that process, then I also concur in the revision of sentence.

. But I cannot join in the Court's conclusion that if the trial judge determines *Miranda* warnings were not given and understood, he should nevertheless weigh the probative value of the prior inconsistent non-*Miranda* statement against the risk that its admission would "create substantial danger of undue prejudice or of misleading the jury." The sugges-

---

[3] It is perhaps worthy of note that while many courts considered the Harris issue prior to the Supreme Court decision, very few anticipated that decision. See the cases collected in *Harris v. New York, supra,* 401 U. S. at 231 n. 4, 91 S. Ct. 643 (Brennan, J. dissenting).

tion is that the statement could be admitted on the limited issue of credibility were the trial judge to find the danger of undue prejudice is minimal. I respectfully dissent because I am of the view that in this case we can and should decide the issue against the admissibility of defendant's prior statement as a matter of law.

That statement, while it may not be a direct admission of guilt, nonetheless goes directly to the heart of the offense and comes perilously close to such an admission. It constitutes an acknowledgement by defendant that she passed the bills, albeit without awareness of their apparently obvious counterfeit character. Its receipt in evidence would be at the risk (and indeed with the high likelihood, as recognized by the trial judge) of the jury considering it on the substance of the criminal charge rather than solely on the issue of defendant's credibility. Therein lies the "substantial danger of undue prejudice." I think it unwise to run that risk, particularly when what is at stake is the privilege against compelled self-incrimination.[1] To me the proposition that any jury could limit consideration of this statement to the issue of credibility flies in the face of the plain reality of the courtroom. That notion quite simply re-

[1]The public defender's brief in the companion case of *State v. Davis*, 67 *N. J.* 222 (1975), notwithstanding, the New Jersey Constitution contains no provision similar to the Fifth Amendment to the Federal Constitution expressly setting forth a privilege against involuntary self-incrimination. And although the due process clause in Article 1, paragraph 1, of the state constitution, see *S. Burlington Cty. N.A.A.C.P. v. Township of Mt. Laurel*, 67 *N. J.* 151, 175 (1975), might well warrant as fundamental to a scheme of ordered liberty incorporation of the privilege in accord with the reasoning expounded in *Malloy v. Hogan*, 378 *U. S.* 1, 84 S. Ct. 1489, 12 *L. Ed.* 2d 653 (1964), I need not frame this opinion in constitutional terms. Either as a mandate of public policy, see *In re Vince*, 2 *N. J.* 443, 448–49 (1949), or as part of our common law, see *State v. Zdanowicz*, 69 *N. J. L.* 619, 621–22 (E. & A. 1903), state law embraces the notion that no person can be compelled to be a witness against himself. For a discussion of the state origins of the privilege against self-incrimination, see *New Jersey Rules of Evidence, Rule* 25, comment sec. 25.1 at 112–13 (Gann 1972).

quires the jury to do the impossible. So clearly is the fundamental privilege jeopardized in the instant case that in my respectful view the majority's position of allowing the trial judge to weigh the statement's probative value against the risk of undue prejudice falls short of the protection to which that privilege is entitled. Thus, I would accept the invitation of *Cooper v. California,* 386 *U. S.* 58, 62, 87 S. Ct. 788, 791, 17 *L. Ed.* 2d 730, 734 (1967), and under these circumstances exercise our power, as a matter of state law, to surround the privilege with higher protective standards than those accorded the Fifth Amendment right by the Supreme Court in *Harris v. New York,* 401 *U. S.* 222, 91 S. Ct. 643, 28 *L. Ed.* 2d 1 (1971), and *Oregon v. Hass,* —— *U. S.* ——, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975).

I would not, however, reject the *Harris-Haas* approach in its entirety. For example, I would permit the jury to receive a non-*Miranda* statement with a limiting instruction as to its admissibility on the issue of credibility only, if that statement dealt with a collateral fact rather than one bearing directly on guilt or innocence. On balance the privilege against self-incrimination would not there be exposed to unwarranted risk. If the fact contained in the statement is collateral, but nevertheless of probative value on the issue of credibility, then there is little likelihood of the jury being confused or misled.

Such is the situation in the companion case of *State v. Davis,* 67 *N. J.* 222 (1975), decided this day, where the challenged statement went to whether defendant was in Chicago (his alibi witnesses' position), or Camden, New Jersey (prior statement). The offense was committed in Pleasantville, New Jersey, and therefore the statement itself tended only to show that defendant, had he testified to the same effect as did his alibi witnesses, was being untruthful as to his whereabouts; but the challenged prior statement did not tend to demonstrate that defendant was in fact in Pleasantville or in the victim's store. The *Davis* case is, in

my view, not only decided rightly on its facts, but the opinion's discussion of the use to which the prior inconsistent statement could have been put, had defendant there testified, is also in keeping with my position on the extent to which we should follow the *Harris-Hass* analysis. I therefore take this opportunity to explain my joinder in the Court's opinion in *Davis*.

I would remand the instant case and affirm the conviction conditioned upon the trial judge's finding that *Miranda* warnings were afforded defendant. In that event I would modify the sentence. If *Miranda* warnings were not given, or if defendant did not effectively waive her right to these warnings, the conviction should be reversed and the case remanded for a new trial, at which Detective Basile's testimony as to defendant's prior inconsistent non-*Miranda* statement should not be received in evidence for any purpose.

*For remandment*—Chief Justice HUGHES, Justices MOUNTAIN and SULLIVAN and Judge COLLESTER—4.

*Dissenting*—Justice PASHMAN—1.

*Concurring and dissenting*—Justice CLIFFORD—1.