THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
DOMINIC MANGANO, PLAINTIFF IN ERROR.

Argued November 30, 1908—Decided March 1, 1909.

1. An instruction to the jury in a homicide case that, if the defendant had formed in his mind an intent to kill, and then instantly he deliberately perpetrated the act to carry out that intent, this would be the deliberation and premeditation which the law requires to make it murder in the first degree—*Held* error, the word "instantly" precluding the idea of deliberation, and a mere intent to kill, without deliberation, not being sufficient to constitute murder in the first degree.

2. A charge that in order to give defendant the benefit of intoxication as a defence, to mitigate the crime of murder from the first to the second degree, he must by the evidence create such a doubt as to his mental capacity as to convince the jury that he was unable to reason or deliberate, is prejudicial to the defendant as imposing on him too heavy a burden of proof.

On error to the Union Oyer and Terminer.

For the plaintiff in error, *William R. Wilson.*

For the defendant in error, *C. Addison Swift,* prosecutor of the pleas.

The opinion of the court was delivered by

PARKER, J. The writ of error in this case brings up the record of the trial of plaintiff in error at the Union Oyer and Terminer and his conviction of murder in the first degree. The assignments of error all bear upon the charge of the court below, or its refusal to charge as requested, and we find it necessary on two of the grounds assigned to reverse the judgment of conviction and remand the cause for a new trial.

The first ground is that the court in charging the jury upon the elements of murder in the first degree, after instructing them that it must be intentional and done with deliberation and premeditation, used this language:

"Now, gentlemen of the jury, premeditation does not require any length of time, a moment of time is sufficient. If you find, from the evidence, that this defendant had formed in his mind an intent to kill, and then instantly he deliberately perpetrated the act to carry out the intention, that is the deliberation and premeditation which the law requires in order to make it murder in the first degree."

The noticeable feature of this instruction is, of course, the apparent, and, as we think, actual incongruity of the two adverbs "instantly" and "deliberately." The question at once suggests itself whether an intent to kill, if formed without previous deliberation, as it might have been in view of this language, can be carried out instantly and at the same time deliberately, or whether one condition does not necessarily exclude the other, and if so, whether the charge was consequently prejudicial to the prisoner.

Our statute defining the degrees of murder and prescribing that murder perpetrated by means of poison or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, * * * shall be murder in the first degree (*Pamph. L.* 1898, *p.* 824), is copied substantially from a Pennsylvania statute of 1794. Soon after its enactment in this state, in the August Term, 1846, of the Hudson Oyer and Terminer, Chief Justice Hornblower, in the case of State *v.* Spencer, charged the jury, as quoted in the opinion of the Supreme Court in *Donnelly* v. *State, 2 Dutcher* (at *pp.* 509, 510), as follows:

"That the premeditation or intent to kill need not be for a day, or an hour, or even a minute. For if the jury believe there was a design and determination to kill distinctly formed in the mind at any moment before or at the time the pistol was fired or the blow struck, it was willful, deliberate and premeditated killing, and therefore murder in the first degree."

The Supreme Court itself said in the Donnelly case, speaking through Chief Justice Green, page 510:

"To constitute murder in the first degree under this clause of the statute, there must be an intention to take life. No particular length of time need intervene between the forma-

tion of the purpose to kill and its execution. It is not necessary that the deliberation and premeditation should continue for an hour or a minute. It is enough that the design to kill be fully conceived and purposely executed."

This pronouncement by the Chief Justice was approved by this court in the same case, 2 *Dutcher* 601, 616, and in *State* v. *Zdanowicz,* 40 *Vroom* 619, and may be regarded as the settled law of this state. But Chief Justice Green went on to say in effect what Chief Justice Hornblower had said in the Spencer case, that "whenever there is, in committing a homicide, a specific intention to take life, there is, in the language of the statute, a willful, deliberate and premeditated killing, and the offence is murder in the first degree." 2 *Dutcher* 510. This latter proposition, as was pointed out in *State* v. *Bonofiglio,* 38 *Vroom* 239, 243, was not included in the approval by this court in *Donnelly* v. *State,* 2 *Dutcher* 619, and was expressly disapproved in the Bonofiglio case, wherein the present Chief Justice called attention to the association in the statute of certain specific kinds of murder, to wit, murder by the administration of poison and by lying in wait, with any other kind of willful, deliberate and premeditated killing, as indicating the meaning which the legislature intended should be given to the words "deliberate" and "premeditated."

The same point was again noted in *State* v. *Deliso,* 47 *Vroom* 808, by Justice Garrison, writing the opinion of this court, who further remarked that "while the statute in its enumeration of the three mental states essential to murder in the first degree places the word 'willful' before 'deliberate' and 'premeditated,' these mental states normally succeed each other in the inverse order, premeditation, both as a mental process and by force of its prefix, necessarily preceding the weighing of the mental content that is implied by the figurative term 'deliberate,' both of which must precede the acceptance by the will of the matter thus previously premeditated upon and weighed."

It is therefore settled in this state that murder in the first degree cannot be predicated on the mere existence of an intent to kill at the time of committing the crime. Some decisions

elsewhere go so far as to say that if the design has been deliberately formed, the crime will be murder in the first degree, although that design is instantly carried into effect. 21 *Cyc.* 727, and cases cited. But this in nowise impugns the proposition just laid down, for between the manner in which a design is carried into effect and the manner in which such a design is formed, there is a substantial difference, and it is to the latter and not to the former that our statutory description is to be applied. Any apparent inconsistency between the two statements is dispelled by following the line of thought just quoted from the opinion in the Deliso case, viz., that normally premeditation comes first—entertainment by the mind of a design to kill; then follows deliberation, the weighing of considerations *pro* and *con,* after which the killing, being determined on, becomes willful, deliberate and premeditated in the sense intended by the statute. "The conception of such a design and its deliberate execution," said Chancellor Magie, speaking for this court in *State* v. *Zdanowicz,* 40 *Vroom* 627, "necessarily takes some appreciable time."

It should be evident, from what has been said, that an intent to kill carried out, does not constitute murder in the first degree unless coupled with the premeditation and deliberation prescribed by the statute, and which, as we have seen, require time—not a long time—not necessarily an hour or a minute, as was said in the Donnelly case, but still an appreciable time, and not until after such premeditation and deliberation have taken place does the act become "willful" in the sense intended by the statute.

Taking up the part of the charge objected to from this point of view, we are forced to the conclusion that it does not embody these essential elements in a form intelligible to the jury, nor, as we think, correctly. The word "instantly" must, under the circumstances, have been used, not in its legal, but in its logical sense. Legally it means forthwith, or at once, which is within a reasonable time, as under section 242 of the Practice act of 1874 (*Revision, p.* 886), requiring an exception to be "instantly" written out and sealed, but no such

meaning attaches to it in this connection. On the contrary, the jury must have understood it in its logical or colloquial sense, as defined, for example, in the Century Dictionary: "At the same time; simultaneously;" or "immediately after; without any intervening time." In this sense the word "instant" is used by Blackstone in describing the seisin of a husband that is insufficient to enable dower to attach (2 *Bla. Com.* 131, 132), and the word "instant" is defined thus at the end of the report in *Fulmerston* v. *Steward, Plowd.* 102, 110: "*Instans est unum indivisible in tempore, quod non est tempus, nec pars temporis, ad quod partes temporis copulantur,*" *i. e.*, a connecting link between two moments of time, taking up no time in itself. Taking the word in this sense, no time, under the charge in question, need intervene between the forming of the bare intent to kill, which as has been already shown is not sufficient to constitute murder in the first degree, and its execution, and the elements of deliberation and consequently willfulness were excluded.

We conclude, then, that the result of combining in the same thought the words "instantly" and "deliberately," was to create an irreconcilable incongruity, necessarily confusing to the jury, and in our judgment incapable of being resolved conformably to the legal principles essential to a proper definition of murder in the first degree.

The second assignment of error to be considered challenges the correctness of the rule laid down by the trial court as to the burden of proof when intoxication is set up as a defence. The portion of the charge on this point was as follows:

"It is apparent in this case, gentlemen, that some of these persons were intoxicated, and it appears that the defendant had been drinking, and that he was intoxicated. Well, gentlemen, if you find in this evidence that he was so intoxicated as to raise in your mind a reasonable doubt as to his mental condition and ability to form, and deliberately and premeditately carry out an intent to kill, then there would be such a doubt as he would be entitled to the benefit of, and he should not be convicted of murder in the first degree."

So far the charge was as favorable to the defendant as he was entitled to expect. The court, however, proceeded as follows:

"But, when he sets up this defence of intoxication, he must prove the defence he sets up by a preponderance of evidence; he must, by the evidence, create such a doubt as to his mental capacity, as to convince you that he was unable to reason or deliberate."

It is claimed that this last portion of the charge imposed upon the defendant a burden of proof which by law he was not required to bear.

In *Warner* v. *State,* 27 *Vroom* 686, this court sustained as correct a charge to the jury that if the defendant was mentally capable of conceiving a design to take the life of the deceased, and did conceive such a design, and if they were satisfied that, in pursuance of such design so conceived, he purposely inflicted the fatal blow, then he was guilty of murder in the first degree. Whereas, if they should find that he was incapable, from the condition of his mind, of conceiving such a purpose, or that in point of fact he had not fully conceived such a purpose, &c., then it would be murder in the second degree.

In *Wilson* v. *State,* 31 *Vroom* 171, it was further held by this court that "if at the time of doing the act the evidence showed that the defendant was so intoxicated that his faculties were prostrated and he was rendered incapable of forming a specific intent to take life, then, although it was no defence for crime, his offence may thereby be mitigated to murder in the second degree." Several judges held that this rule was too harsh, as requiring a jury to find that the defendant had been rendered incapable of forming an intention to kill, rather than that such intention did not in fact exist; but the court seems to have been unanimous on the point that the fact of intoxication was one which should be proved by weight of evidence, the majority holding that it must also be shown to have been sufficient to render the defendant incapable of forming an intent to take life, and, if so proved, would mitigate the offence to murder in the second degree.

The charge under examination, however, seems to go further than either of the above-cited cases, for it requires the jury to be convinced that the defendant was unable to reason or deliberate.   This is more than is called for by the rule, which under no contention requires more than that they should be satisfied by a preponderance of evidence.

In *French* v. *Day,* 89 *Me.* 441, it was held that a charge that the burden was on the defendants to make out a right by the clear preponderance of evidence and by convincing proof, was erroneous when mere preponderance was required, and the force of the word "convince" is strikingly shown in the explanation so often given to juries on the subject of finding the defendant guilty beyond a reasonable doubt, that they must have an abiding "conviction" of the defendant's guilt.

Hence, while in other respects the charge on the subject of drunkenness was unexceptionable, so far as concerned the defendant, the use of the word "convince" so leavened the general language of the instructions as to impose upon the defendant a burden which the law did not require him to bear.

For these two reasons, therefore, the judgment of the Union Oyer must be reversed, and a new trial ordered.

*For affirmance*—REED, VREDENBURGH, GRAY, DILL, J.J.  4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, PARKER, VOORHEES, MINTURN, BOGERT, VROOM, J.J.  9.