THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. LOUIS LINKER AND MAX SAPHIRO, PLAINTIFFS IN ERROR.

Submitted March 22, 1920—Decided June 14, 1920.

1. The charge on reasonable doubt approved by the Supreme Court in *State* v. *Contarino,* 91 *N. J. L.* 103, and questioned in this court in *S. C.,* 92 *Id.* 381, is disapproved.

2. Not. having been requested to define reasonable doubt or to in-
struct the jury on the subject at all, the charge of the trial court,
in these words: "If they [defendants] are guilty, it must be be-
yond a reasonable doubt," would have been faultless had the
judge not immediately proceeded to qualify that assertion by say-
ing, "which means nothing more or less than that you, as the
men sworn to conscientiously determine this case are satisfied in
your minds that the defendants did conduct a disorderly house;
if you are not so satisfied, you should acquit; if you are so satis-
fied, you should convict;" and this qualification, being erroneous,
vitiated the charge on the question of reasonable doubt.

3. The following is approved as a definition: Reasonable doubt is
not a mere possible doubt. It is that state of the case which,
after the entire comparison and consideration of all the evidence,
leaves the minds of the jurors in that condition that they cannot
say they feel an abiding conviction to a moral certainty of the
truth of the charge.

On error to the Supreme Court.

For the plaintiffs in error, J. Hampton Fithian.

- For the defendant in error, Daniel V. Summerill, Jr.

The opinion of the court was delivered by

WALKER, CHANCELLOR. The defendants were convicted in
the Salem Quarter Sessions of the offence of keeping a dis-
orderly house and sued out a writ of error from the Supreme
Court, where the judgment was affirmed; and that affirmance
has been brought into this court by writ of error for review.
In the Supreme Court the following opinion was filed:

"PER CURIAM: The defendants were convicted of keeping
a disorderly house. The indictment was in the common law
form, charging that the defendants kept the house for their
own profit and gain, and that certain persons, men and women
of evil name and fame, collected there drinking, tippling,
fighting, gambling, &c.

"It is urged that the verdict should have been not guilty.
This is a matter which cannot be considered on error, if there
was any evidence to justify the submission of the case to the
jury.

"We think there was ample evidence of drunkenness and disorderly conduct.

"It is argued that it was error for the court to permit proof of the sale of hard cider and wine by the defendants to frequenters of the house, because there was no charge in the indictment that liquors were sold contrary to law.    Our decisions, however, hold to the contrary.    See *State* v. *Rairorf,* 64 *N. J. L.* 412; *State* v. *Derby,* 60 *Id.* 258.

"It is also urged that there was error in the charge to the jury by reason of comments made by the court upon the testimony, particularly with relation to sales of hard cider and red wine.    There was no misrecital of the evidence by the court, and reasonable comment on the evidence was within the province of the court.

- "It is contended that the court refused to charge the jury certain requests which were submitted, which substantially were that the jury could not convict the defendants of keeping a disorderly house upon the testimony as to the alleged sale of intoxicants, and that, therefore, such testimony should be disregarded by the jury.

"The court did charge that no conviction could be based upon the finding of the jury that intoxicants were habitually sold upon the place in violation of law; that if the sale of intoxicating liquors was the only fact in evidence by the state, it would be the duty of the jury to acquit, because the illegal sale of liquor alone under our statutes is not sufficient to constitute a disorderly house.    That statement of the law was accurate and was all that the defendants were entitled to have charged.    The sale of liquor was an element to be considered and could not be entirely disregarded in considering whether the *locus in quo* was or was not a disorderly house.

"Finally, it is urged that the trial judge's definition of reasonable doubt was erroneous and prejudicial to defendants' rights.    The language employed by the court was: 'From the evidence thus produced, you are to determine whether or not the two defendants are guilty.    If they are guilty it must be beyond a reasonable doubt, which means nothing more nor less than that you as men sworn to conscientiously determine

this case, are satisfied in your minds that the defendants did
conduct a disorderly house. If you are not so' satisfied, you
are to acquit; if you are so satisfied, you should convict.'

"This is practically the same language used in the charge in
the case of *State* v. *Contarino*, 91 *N. J. L.* 105, and sustained
by this court, where we said that 'the rule of reasonable doubt
is not encompassed by any set formula. It is enough that its
practical application to the facts of a given case be sufficiently
stated to the jury so as to avoid misconception.' The convic-
tion will be affirmed."

The Supreme Court rightly observes that the charge on the
question of reasonable doubt in this case was in practically the
same language as that used in *State* v. *Contarino*, 91 *N. J. L.*
103, in that court, and, therefore, the verdict was not dis-
turbed on that ground. But the Supreme Court failed to note
that when *State* v. *Contarino* came to this court (92 *Id.* 381),
we said (at *p.* 384) that while the trial court's instruction to
the jury as to the law of reasonable doubt was approved by the
Supreme Court, we did not wish to be understood as giving
our approval to it, as we were not called upon to decide the
question in the state of the record before us. It is, therefore,
open here.

In the case at bar there was no request preferred to the
judge of the Quarter Sessions to define reasonable doubt. If
there had been he would undoubtedly have been required to
define it. Nor was there any request to charge the law of rea-
sonable doubt. However, he did charge on the question, and
was therefore required to charge correctly. But he neither
defined nor correctly applied the doctrine. His deliverance
on this subject was as follows:

"The whole circumstances surrounding the case, as testified
to by witnesses, is before you, and from the evidence thus pro-
duced, you are to determine whether or not the two defend-
ants are guilty. If they are guilty it must be beyond a rea-
sonable doubt, which means nothing more or less than that
you, as the men sworn to conscientiously determine this case,
are satisfied, in your minds, that the defendants did conduct a

disorderly house. If you are not so satisfied, you should acquit; if you are so satisfied, you should convict."

This was excepted to and assigned for error.

What the trial judge told the jury was equivalent to saying: "If you are satisfied in your minds that the defendants did conduct a disorderly house, they are guilty beyond a reasonable doubt." This left no room for the operation of the doctrine of reasonable doubt, but permitted the jury, if, on a review of the evidence, without considering reasonable doubt, they believed the defendants guilty, to exclude reasonable doubt; while, under the law, the jury had no right to find defendants guilty if they entertained a reasonable doubt of their guilt. The fault of this instruction is well illustrated in *State* v. *Raymond,* 53 *N. J. L.* 260. There the court charged in effect that if the jury thought the defendant did not commit the crime they should give him the benefit of the doubt, which was held erroneous. Here the charge in effect was that if the jury thought the defendants did commit the crime then they were guilty beyond a reasonable doubt.

Not having been requested to define reasonable doubt, or to instruct the jury on the subject at all, the charge of the trial court would have been faultless in this regard if the judge had contented himself with saying, as he did, "If they [defendants] are guilty it must be beyond a reasonable doubt," but he immediately proceeded to qualify that assertion by saying this, "which means nothing more or less than that you, as the men sworn to conscientiously determine this case, are satisfied in your minds that the defendants did conduct a disorderly house; if you are not so satisfied, you should acquit; if you are so satisfied, you should convict." Plainly, these words gave the jury to be informed that if, upon a review of the evidence, they were satisfied that the defendants were guilty, they should convict them, and that, being guilty, there was, of course, no room for the operation of the doctrine of reasonable doubt. How obviously this is so will appear from the principle of law that a person charged with crime is presumed to be innocent until proven guilty. And this presumption abides with him through the trial, so that, therefore, when the jury

go from the bar of the court to their room to deliberate, they enter that room with the presumption of innocence still protecting the accused.   It was in this view that the Supreme Court said in *State* v. *Raymond*, 53 N. J. L. (at p. 267) :

"In the various mental conditions, ranging from that in which the jury think the accused innocent to that in which they are convinced beyond a reasonable doubt of his guilt, he is entitled to the benefit of their uncertainty."

The above-mentioned qualification of the otherwise correct charge on the question of reasonable doubt in this case, vitiated the whole deliverance on that question.

The case *sub judice* is very like that of *State* v. *Schreiber,* 79 N. J. L. 447.

In *State* v. *Lang,* 87 N. J. L. 508, a charge that in considering the testimony if the jury felt undecided as to what they ought to do, then they should take into consideration the testimony given concerning defendant's character, and if that cast a reasonable doubt, in connection with the other testimony, upon his guilt, they must give him the benefit of that doubt, was held by this court to be error, because the defendant was entitled to have all the relevant testimony, including that relating to his good character and reputation, considered by the jury at the same time, and, if there were a reasonable doubt of guilt, even if engendered by previous good repute, the defendant was entitled to an acquittal.   And in that case it was also held that when part of a charge is unsound, and no proper qualification of it is to be found in the context or in the entire charge, there is error; and this is so when the erroneous part is in and of itself a particular qualification and limitation of language which, without such qualification and limitation, is unobjectionable.   This is particularly apposite to the charge under review, for here, as in the Lang case, the error is found in the qualification of unobjectionable language, which qualification is not elsewhere in the charge corrected.

Quite aside from the doctrine of reasonable doubt as applied to the special circumstances of particular cases, as that the good reputation of a defendant may be sufficient to raise a reasonable doubt and lead to an acquittal (*State* v. *Thorne,*

83 *N. J. L.* 799; *State* v. *Baker*, 53 *Id*. 45) ; and that, if reasonable doubt is raised, even by inconclusive evidence of an *alibi*, the defendant is entitled to the benefit of it (*State* v. *De Geralmo*, 83 *Id*. 135) ; there are so many good definitions of reasonable doubt in the books that it is strange that trial judges improvise definitions of their own instead of adopting some one of those which have received the sanction of the appellate courts. For instance, that of Chief Justice Shaw in the famous Webster case, cited with approval by this court in *Donnelly* v. *State*, 26 *Id*. 601 (at *p*. 615), as follows:

"It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge. The burden of proof is on the prosecution. If upon such proof there be reasonable doubt remaining, the accused is entitled to the benefit of an acquittal. The evidence must establish the truth of the fact to a reasonable and moral certainty, a certainty that convinces and directs the understanding, and satisfies the reason and judgment of those who are bound to act conscientiously upon it. This we take to be proof beyond a reasonable doubt; because if the law should go further than this, and require absolute certainty, it would exclude circumstantial evidence altogether," which, omitting comment, explanation and repetition, may well be condensed into the following:

"Reasonable doubt is not a mere possible doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge."

We find no error in the record except with reference to the charge on the question of reasonable doubt. In all other respects we agree with the opinion of the Supreme Court. Because of the error mentioned the judgment under review must be reversed, to the end that a *venire de novo* may issue.

*For affirmance*—WHITE, WILLIAMS, JJ.    2.

*For reversal*—THE CHANCELLOR, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, HEPPENHEIMER, TAYLOR, GARDNER, ACKERSON, JJ.    10.