THE STATE, DEFENDANT IN ERROR, v. SMALLEY BUR-
RELL AND WILLIAM ALBERT BROWN, IMPLEADED,
ETC., PLAINTIFFS IN ERROR.

Argued February 1, 1938—Decided April 29, 1938.

278

For the plaintiffs in error, *Harry H. Weinberger* (*Samuel L. Rothbard,* on the brief).

For the state, *Lynwood Lord,* prosecutor of the Pleas.

The opinion of the court was delivered by

PARKER, J. The plaintiffs in error, together with one Anna Brown, sister of William Albert Brown, were jointly indicted for the murder of one William J. Horner on June 16th, 1937. All were jointly tried, and convicted of murder in the first degree; Anna Brown with recommendation of life imprisonment, the others without recommendation. Anna Brown has not joined in this writ of error.

The story of the crime, as the jury were entitled to find on the evidence, is that on the evening of June 16th the three had been drinking at a saloon, and formed the plan to go to Horner's house and rob him. Horner lived alone, was sixty-five years old, and quite deaf. It was then ten o'clock and after dark, according to Brown's testimony. The court in charging the jury mentioned a later hour, but the exact time is immaterial, if it was night, as all the testimony indicates. They went to the kitchen door, which was locked, and there was an outside screen door which was also secured in some way. Burrell broke open the screen door, and was turning the knob of the main door trying to open it when Horner, apparently roused by the noise, came and opened it, and was immediately attacked by all three, they at the same time demanding his money, and was beaten into insensibility and left unconscious on the floor, where he was found the next

day. He died of the injuries a day or two later. On the evidence, the jury were amply justified in finding that murder was committed in the perpetration of a burglary, and in the perpetration of a robbery; and that all three defendants were principals. The case being here both on strict writ of error and also on a certificate of the entire record pursuant to section 136 of the Criminal Procedure act, plaintiffs in error specify as a cause for reversal that the verdict was against the weight of evidence. This may as well be disposed of at once by saying that the evidence of guilt and the evidence to support a first degree verdict was overwhelming, and that this specification is devoid of any substance whatever.

We take up the other points made for reversal.

The first is that there were two inconsistent instructions on reasonable doubt, and that one was erroneous to the prejudice of the defendants.

The first, which is claimed to be wrong, was:

"Reasonable doubt would exist when the judgment of the jury, after a careful review of all the testimony and the evidence, it finds itself unconvinced of the guilt of the prisoners. If such doubt exists, you are charged to resolve it in favor of the prisoners at the bar."

This, as stated in *State* v. *Leo,* 80 *N. J. L.* 21 (at *pp.* 24, 25), is the language used by Chief Justice (afterwards Chancellor) Magie in *Wilson* v. *State,* 60 *Id.* (at *pp.* 171, 172), and expressly approved in the Leo case.

The second, admittedly correct, was taken from *State* v. *Linker,* 94 *N. J. L.* 411, and is as follows:

"It is not a mere possible doubt, because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that state of the case which after the entire comparison and consideration of all the evidence leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge."

Both the quoted instructions were correct, and we see no inconsistency of either with the other.

The second point rests specifically on assignments and specifications numbers 45 and 46 which read as follows:

"45. Because the court committed prejudicial and harmful error in placing the plaintiffs-in-error on trial for a crime for which they were not indicted, on the ground that it violated Article 1, Section 9 of the New Jersey Constitution.

"46. Because the court committed prejudicial and harmful error in placing the plaintiffs-in-error on trial for a crime for which they were not indicted, on the ground that it violates Article 14, Section 1, and Article 5, of the United States Constitution."

It will be observed at once that no judicial ruling of the trial court is adequately presented by either of these paragraphs, but the argument under them is based upon a sentence in the charge which is reproduced in assignment and specification No. 27 and reads as follows:

"Now, if you are convinced, ladies and gentlemen of the jury, that the state has shown to you beyond a reasonable doubt that these prisoners at the bar committed or perpetrated or attempted to perpetrate either a robbery or burglary, or both, then they have proved or the state has proved its case to be that of murder in the first degree."

It is alleged that this instruction was erroneous in law and permitted a finding of murder although only a burglary or robbery may have been committed. We use the language of the specification. The reasoning appears to be that the court in this particular sentence should have included the necessity of a finding by the jury that the defendants were guilty of killing deceased. It may be conceded that if the quoted sentence stood alone in the charge, the instruction would have been legally insufficient. But resorting to the invariable rule that the charge must be read as a whole, it becomes clear that the jury could not possibly have been misled by the omission from the quoted sentence of the element of homicide. The court instructed the jury carefully and in logical sequence to the effect that four elements were necessary to a first degree conviction; that William J. Horner was dead; secondly, that Horner was killed as the result of physical injuries; third, that those physical injuries were inflicted by the defendants; and fourth (quoting the judicial

language) "in order to convince you beyond a reasonable doubt that the defendants are guilty of murder in the first degree, the state must show that the murder was committed in perpetrating or attempting to perpetrate robbery or the crime of burglary." The court went on then to comment on various phases of the evidence bearing particularly on the elements of burglary and robbery, and concluded in the language of specification No. 27 first above quoted. A reading of the charge makes it perfectly clear that the quoted language could not have been understood otherwise by the jury than as connected fundamentally with the first three elements of the crime. We may well add that throughout the trial there was no dispute at any time with regard to the facts that the three defendants made the violent entry into Horner's house that had already been described, beat him until he was insensible and left him there, and that he died as a result of the injuries. The second point is therefore clearly without substantial merit.

3. The third point is that the "court committed prejudicial and harmful error in submitting to the jury the issue of a killing committed in the course of a burglary or robbery, or both, after the prosecutor elected upon which crime he would rest his case."

This rests upon the claim that the prosecutor had elected to rest his case on homicide committed in the perpetration of robbery, and this, in turn, rests upon the statement by the prosecutor when offering in evidence a small box apparently of the jewelry box type, that "the state claims that the motive in this case was robbery  *  *  *." Counsel for the plaintiffs in error appear to confuse the motive with the action prompted by it. Plainly the motive was robbery if the evidence is to be believed; and apparently robbery was committed, let alone attempted. But the fact that robbery was a motive is in no way inconsistent with the commission of a burglary by felonious breaking and entry into a dwelling house in the nighttime for the purpose of committing a robbery. It should be unnecessary to say more on this point.

4. The fourth point is based on an additional assignment

and specification bringing up a portion of the charge which quotes section 131 of the Crimes act of 1898 (*Comp. Stat.*, *p.* 1787; *Rev. Stat.* 2:115-1) as defining the crime of burglary. This section was quoted in full in *State* v. *Hauptmann*, 115 *N. J. L.* 412 (at *p.* 425), and considered by this court at that time. It had been previously considered in *State* v. *Jones, Ibid.* 257, and we were careful to point out in both cases that the statute, while in part inconsistent with the common law definition of burglary because of including other buildings than dwelling houses, and certain similar or connected buildings (4 *Blk.* 225) and crimes other than felonies, nevertheless included the elements of burglary at common law, and that unless the conviction was rested on some element not covered by the common law definition, as for example such a building as the field office of a real estate development, or the intent to commit only such crime as a battery, there was no harmful error, if error at all.

Now in the present case there was no suggestion that the defendants broke into any building except a dwelling house, nor that they did so with intent to do anything but rob the deceased. In fact, the judge put the case expressly on the theory of intent to rob. As in the Hauptmann case, therefore, it becomes unnecessary for the purposes of a decision to decide whether the word "burglary" as used in section 107 of the Crimes act refers to the various offenses enumerated in section 131. However, for the guidance of the trial courts, it seems advisable to say that we think the word "burglary" in sections 106 and 107 means burglary at common law.

Section 131 does not contain the word "burglary" in its text, and differs in that respect from section 123, for example which uses the word "arson." In the Compiled Statutes of 1910, printed by contract pursuant to *Pamph. L.* 1910, *p.* 556, the word "Burglary" appears in heavy faced type as a prelude to the text; but it is no part of the section. In the Crimes act, Revision of 1898, *Pamph. L.* (at *p.* 830), the word appears in the margin, and there is some similar marginal note attached to every other section in that volume and in every volume of session laws for over a century past. They

appear in the various compilations back to Kinsey in 1732. Up to 1828 this was probably a custom, but in that year (Harrison's Compilation 163) the legislature enacted a statute, the second section of which requires the secretary of state to cause "each and every of the public laws to be copied for the press, *with proper marginal notes to each section,*" and by section 5 of the same act the secretary was allowed "for making and preparing marginal notes and index" the sum of fifteen cents per one hundred words. The fifteen cent fee was repealed in 1881 (*Pamph. L., p.* 26), but the second section has been carried down to date in the various revisions. See Revised Statutes of 1847, page 711, section 2; Revision of 1877, page 1122, *Comp. Stat.* 1910, *p.* 4981; Revision of 1937, title 1, chapter 3, section 1, which has a footnote giving a full list of preceding statutes. It seems to be clear, therefore, that the marginal note is simply an editorial addition and is no part of the statute itself; and, indeed, this was expressly held by the late Chief Justice Depue in *Howard Savings Institution* v. *Newark,* 63 *N. J. L.* 65 (at *p.* 69). The precise point does not seem to have been involved in that case, so that the reversal in the same volume at page 547, which bears on matters of punctuation (551), does not impair the value of what was said in the opinion below, on the precise point, although it must be admitted that it was pure *obiter dictum.* But though *obiter,* we think it was correct.

It may further be noted that when the laws were revised by the legislature of 1874 and 1875, and the result of that enactment was printed for the information of the bar and public prior to the compilation into the Revision of 1877, neither the Crimes act nor any other act in this volume of revised statutes has any marginal notes whatever, and we find the section now under examination at page 153 as section 94 of the Crimes act. It may also well be noted that the Revision of 1937 has no marginal notes, although it does have black type headings, and that the section in question at page 436 of title 2 is not headed "burglary" alone, but the heading reads: "Burglary; breaking and entering by night." The next section is "breaking and entering by day." The revisers

properly considered the section as including burglary, but also as including other offenses which at common law would not be burglary.

5. The fifth point is that "the court erred in excluding from consideration by the jury the question of any lesser degree of murder than first degree."

The brief invokes assignments of error Nos. 14 and 15 (refusal of two requests to charge), and specifications 32, 33, 35, 36, 38, 39, 42 and 43. It is unnecessary to reproduce them here. Numbers 32, 33, 35, 36 bring up passages in the charge in which the jury were instructed to find guilt of murder in the first degree, on the one hand, or acquittal, either for failure of proof beyond a reasonable doubt, or because the proof showed that they were so intoxicated as to be incapable of forming an intent to commit robbery or burglary.

Numbers 42 and 43 do not reproduce the instructions challenged, and under the well settled rules do not call for consideration. Numbers 38 and 39 relate to refused requests. No. 39 is irrelevant here, as it relates to Anna Brown, who has taken no writ of error so far as appears. No. 38 relates to a refusal by the trial court to charge the third request, which reads as follows: "While drunkenness is not an excuse for crime, temporary drunkenness is a form of alcoholic insanity which may deprive the defendants, Smalley Burrell and William Brown, of all their faculties to distinguish right and wrong and that by their drunkenness or temporary alcoholic insanity they were made incapable of having the necessary felonious intent to break and enter, steal and murder and it is for you to judge from the testimony whether Smalley Burrell and William Brown were in that condition when the crime was committed and if they were, they cannot be convicted of murder in the first degree unless you also follow your verdict with a recommendation of imprisonment for life of hard labor or you must find them guilty of murder in the second degree."

The request was properly refused. It is sufficient to say that it was faulty as requiring the court in the first alterna-

tive, to control the jury by requiring a recommendation of life imprisonment, which by the statute is committed solely to the discretion of the jury. *Pamph. L.* 1919, *p.* 103.

As to the instructions that were given we see no error. Where the question is merely one of specific intent to take life, intoxication may be so pronounced as to negative the mental ability to form such intent, and the homicide will be murder in the second degree. *State* v. *Mangano,* 77 *N. J. L.* 544; *State* v. *Mack,* 86 *Id.* 233. But the crime may be murder without an intent to take life; and if there be homicide in the commission or attempt to commit any of the crimes specified in section 107 of the Crimes act, including burglary and robbery, such homicide, by the express language of section 106 is murder, and by section 107 the murder is of the first degree quite irrespective of an intent to take life, and by force of the statute. But burglary and robbery are both crimes involving an intent; and if because of intoxication the faculties of the perpetrator are so prostrated that he is incapable of forming an intent, we may concede for present purposes the claim of counsel that there is no intent, and hence, in a legal sense, neither burglary or robbery nor an attempt to commit either. The other crimes mentioned in sections 106 and 107 are arson, rape and sodomy, which did not figure in the case at all. Section 106 adds "or any unlawful act against the peace of this state of which the probable consequence shall be bloodshed." There was no evidence pointing to any such act or attempt to commit it, except as incidental to burglary or robbery, or both. Such an act, standing by itself, and committed by a sane person without premeditation and deliberation, would be murder in the second degree; but we consider that the judge committed no error prejudicial to defendants when he told the jury "the true rule * * * to be deduced from a mass of authorities is that there is a situation in which the fact of drunkenness is entitled to weight, not as an excuse for crime nor in extenuation of it but as a fact tending to show that the crime imputed was not committed." This was, if anything, too favorable to the defendants. In *State* v. *Marriner,* 93 *N. J.*

*L.* 273; *affirmed,* 95 *Id.* 265, it was specifically held that "mental unsoundness produced by intoxication, even where it is so pronounced as to exhibit an entire prostration of the faculties of the defendant, is no defense against a criminal charge."

6. That the verdict was erroneous as not specifying the degree of guilt.

The record, as returned with the writ of error, exhibits a verdict in the case of each plaintiff in error, of guilty of murder of the first degree. Strictly speaking, the record is conclusive; but it will do no harm to add that the stenographic transcript shows that in reply to the clerk's question, the foreman at first said "guilty;" the court then asked if the verdict was guilty in the first degree, and received an affirmative answer. The clerk then pronounced the usual formula "members of the jury, hearken to your verdict as the court has ordered it recorded. You say you find the defendant Smalley Burrell guilty of murder in the first degree, in the manner and form as he stands charged and so say you all?" The jury: "We do." The verdict was lawfully rendered and received.

7. The seventh point is that the court erred in admitting the statement of Anna Brown "over the objection of plaintiff in error and exception duly taken thereto," &c. The argument is that Anna Brown's confession, though made in the presence of the other defendants, was not evidential against them if they merely sat silent. But to this there are two answers. The first is that the only objection made at the trial was that it had been induced by a threat of sending Anna to the state home for girls. That objection (on which an exception was based) is not now invoked. Then counsel for defendants suggested that the statement was not taken in the presence of the other defendants. The prosecutor said that it was, and the court admitted it without further objection. In any event it was evidential against Anna; and the second answer is that the court expressly so ruled, and charged the jury as requested, that "when a common enterprise is at an end no one of the co-defendants is permitted by a subse-

quent action or declaration of his own to affect the others. The statements of each co-defendant in this case can only be used against the person making that statement."

Point 8 attacks certain comments in the charge relating to the facts in the case, as invading the province of the jury. We have examined the charge carefully, and find that it not only did not control the jury on fact matters, but the judge was careful to warn them that their recollection of the testimony, and not his, was to control. See *State* v. *Hauptmann,* 115 *N. J. L.* (at *pp.* 429, 430), and cases cited.

Point 9 is in two parts: (a) refusal to charge that if defendants raised a doubt in the mind of the jury as to their condition as regards intoxication at the time of committing the crime, the offense would be mitigated and there should be a first degree verdict with recommendation, to mercy (*sic*) or verdict of murder in the second degree. The instruction was properly refused. Apart from what has been said above on the point of intoxication, the defendants were required to do more than raise a doubt; they were required to satisfy the jury of intoxication by preponderance of evidence. *State* v. *Mangano,* 77 *Id.* 544, 549, cited in the brief for plaintiffs in error.

(b) That the court charged: "If those defendants have made out to you convincingly, but not beyond a reasonable doubt, that by reason of their intoxication they were insane and did not know what they were doing within the meaning of intoxication as I defined it to you, then they ought to be acquitted," and that this was erroneous. We think that it was, on the authority just cited. But before the jury were sent out, the prosecutor called the attention of the court to the error, in the presence of the jury, and there was a colloquy as a result of which the instruction was corrected to read conformably to the rule in the Mangano case.

Point 10 relates to specification No. 27, already fully considered under point 2, and consequently requires no further discussion.

Point 11 alleges error in the following passage of the charge, apparently quoted from the third edition of Wharton

on Homicide: "It is laid down that where several persons combine and conspire together for the common object to commit robbery and in pursuit of that object one of them does an act which causes the death of a third person, each and all are principals and each and all may be convicted of murder, usually in the first degree, under the statute. That is a concise statement and it is applicable in this instance."

The gist of the argument of this point is that the instruction injected into the case the crime of conspiracy, which was not covered by the indictment. But murder in pursuance of a conspiracy to rob is none the less murder; the evidence tended to show a preconceived and agreed plan and, what is called in the authorities, a common design. As the evidence indicated that all three were present at the breaking and entering and robbery, the instruction was perhaps unnecessary, but it was relevant and correct in law.

Point 12. Each plaintiff in error petitioned the court for appointment of counsel, alleging financial inability to pay or employ counsel. Mr. Justice Lloyd, the Supreme Court justice holding the Circuit, appointed Frank L. Johnson, a counselor-at-law of over ten years' standing, as counsel to the prisoners. Mr. Johnson prepared and tried the case and there seems to be no criticism of the character of his services. No objection was made at any time before or during the trial so far as appears before us. Now, after conviction and writ of error, it is alleged in the brief that Mr. Johnson was at the time recorder of Woodbury in Gloucester county, and, as such, a criminal judge, and his appointment was error which should lead to a reversal. We confess ourselves unable to see any merit in this point. A counselor-at-law in good standing who happens to be a police justice in a small city is not thereby debarred from practicing law in the county courts. It does not even appear that Mr. Justice Lloyd knew Mr. Johnson was recorder of Gloucester. As we have said, no objection was made at any time. The case was fully tried, the state's witnesses fully cross-examined, and the defendants' case orderly presented. The cited decisions of *State* v. *Favorito,* 115 *N. J. L.* 197, and *Powell* v. *Alabama,* 287

*U. S.* 45, are not in point. In the Favorito case the point was raised at the trial. In the Powell case the report shows a state of affairs greatly to the discredit of the trial court. In the present case the trial judge did not make the appointment, but it was made by a justice of the Supreme Court of long experience and a character outstanding for wisdom and fairness.

Point 13. That the court refused to charge defendants' first request, as follows: "Uncorroborated testimony of co-defendants in a case must be observed and stand the closest scrutiny, and in order to believe the testimony of one of the co-defendants, the jury must take into consideration whether in the light of all the testimony and actions of that particular co-defendant, his or her testimony can be believed in full or part must be rejected. The state has not produced any testimony in corroboration of what happened in Mr. Horner's house. Therefore, the jury must be guided by the statements of the respective defendants and must also decide whether the testimony reflecting the entire blame on one co-defendant and very little to himself or herself are true."

This, we think, was properly refused because there was corroboration in some particulars. Moreover, it called for comments on the evidence which would control the jury as fact finders as to particulars exclusively within their province.

Point 14, weight of evidence, was previously discussed.

We find no harmful error. The judgment of conviction is affirmed.

HEHER, J. (Concurring.) I concur in the view that, in respect of its extra common law classifications, section 131 of the Crimes act does not define "burglary" within the intendment of section 107, as amended by *Pamph. L.* 1917, *p.* 801. *Comp. Stat.* 1910, *pp.* 1780, 1787; *Rev. Stat.* 2:138-2, 3; 2:115-1. There being no clear expression to the contrary, it is to be presumed that the legislature, in the adoption of section 107, had in mind burglary as defined at common law. Unlike the captions of the individual sections of the Revised Statutes of 1937, the heading

of section 131 of the Crimes act, *supra,* was not comprised in the section as enacted by the legislature, and therefore is not to be considered as of its substance for the purpose of determining the legislative intent. It was therefore error for the trial judge to charge as he did respecting the elements of burglary. But, for the reasons stated by Mr. Justice Parker, the error did not prejudice the substantial rights of plaintiffs in error.

And, in my view, there was error also in the instruction that, as respects the defense of intoxication, acquittal was the alternative to a conviction of murder in the first degree. *Wilson* v. *State,* 60 *N. J. L.* 171; *State* v. *Mack,* 86 *Id.* 233; *State* v. *Mangano,* 77 *Id.* 544. See, also, concurring opinion in *State* v. *Roach,* 119 *Id.* 490. Yet this error worked no harm in matter of substance, for the reason that, while the trial judge conceived there was a factual issue as regards the defense of intoxication and submitted the question to the jury, there was an utter lack of evidence that either plaintiff in error was so intoxicated as to lack the mental power to form the requisite particular intent to commit the underlying crime. Each prisoner, on his examination—direct and cross—acknowledged that he entered the deceased's premises with the prescribed felonious intent, previously formed, and that he was fully aware at all times of his acts while upon the premises. And their actions, as they severally related them on the witness stand, demonstrate this beyond peradventure. There is no evidence to the contrary.

In *Wilson* v. *State, supra,* this court, in a deliverance by Mr. Justice Van Syckel, laid down the rule that the evidence, to create a jury question on the issue of intoxication, must provide a substantial basis for the factual conclusion that the faculties of the accused were so far prostrated as to render him incapable of forming the essential intent. In the words of Judge Andrews, in his dissenting opinion in *People* v. *Koerber,* 244 *N. Y.* 147; 155 *N. E. Rep.* 79, 83, there is no question for the jury, where that defense is interposed, unless there be evidence tending to show that, at the time of the alleged burglary, there was, so far as the accused is concerned,

"a complete absence of conscious volition—an ignorance of his acts and purposes." Assaying the evidence here in the light of this principle, the plaintiffs in error were indisputably not harmed by the instruction thus complained of.

With this qualification, I vote to affirm, for the reasons expressed in the opinion of Mr. Justice Parker.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 14.

*For reversal*—None.